121 So.2d 914

**Ex parte Laura H. EMERSON.**

**6 Div. 553.**

Supreme Court of Alabama.

June 30, 1960.

Turner & Turner, Tuscaloosa, for petitioner.

 

Jones, McEachin & Ormond, Tuscaloosa, for respondent.

STAKELY, Justice.

The petitioner Mrs. Laura H. Emerson filed her complaint in the Circuit Court of Tuscaloosa County, Alabama, against Dr. J. B. King, doing business as King Laboratories, claiming damages for personal injuries received as a result of the purchase and use in the County of Tuscaloosa, Alabama, of Pedolatum, a product manufactured by the defendant for the removal of corns and calluses.

The complaint alleges that the defendant sold the aforesaid Pedolatum to retail druggists in the County of Tuscaloosa, Alabama, for resale to the public, including the plaintiff, to be used for the removal of corns and calluses, according to the directions printed on the label by the defendant, that the aforesaid Pedolatum contained harmful ingredients which were imminently or inherently dangerous when used as directed by the defendant for the purposes for which it was intended.

The summons and affidavit attached to the complaint stated that the defendant is a nonresident of the State of Alabama, that his last known post office address was Jacksonville Road, Tyler, Texas, and that the provisions of Title 7, § 199(1), 1955 Cumulative Pocket Part, Code of 1940, were applicable for obtaining service of process upon the defendant. Service of summons and complaint were had upon the Secretary of State of the State of Alabama and a copy of the summons and complaint were mailed by registered mail, return receipt requested, to the defendant at the aforesaid post office address by the Secretary of State of the State of Alabama, and a return receipt, signed by Dr. J. B. King, was received back in the office of the Secretary of State of the State of Alabama as provided by Title 7, § 199(1), 1955 Cumulative Pocket Part, Code of 1940.

The defendant Dr. J. B. King, doing business as King Laboratories, entered a special appearance and filed a motion to quash service of process on the grounds that (1) he was not doing business in Ala-

bama and (2) the affidavit attached to the summons and complaint did not state facts sufficient to obtain service of process as provided by Title 7, § 199(1), 1955 Cumulative Pocket Part, Code of 1940.

The Hon. W. C. Warren, judge of the Circuit Court of Tuscaloosa County, granted the motion to quash the service because the plaintiff's affidavit "does not state the facts upon which the plaintiff claims the right to have service through the Secretary of State by mail as provided in § 199(1), Title 7, (1955 Cumulative Pocket Part, Code of 1940)." Parentheses supplied.

The plaintiff amended her complaint for the purpose of adding as a party defendant Pedolatum Distributors and for the purpose of amending the affidavit required by Title 7, § 199(1), Code of 1940, as follows: "That the cause of action made the basis of this suit arose out of the doing of business in the State of Alabama by the defendants consisting of the sale and distribution of a drug or medicine named Pedolatum by the Defendants in the State of Alabama, to retail druggists in the City of Tuscaloosa, County of Tuscaloosa, State of Alabama, for resale to the public, including the Plaintiff, that the provisions of Title Seven, Section 199(1), Code of 1940, are applicable in this cause for obtaining service of process on both the defendants, that the defendants are residents of the State of Texas and that their last known post office address is Jacksonville Road, Tyler, Texas."

Service of process was had on the Secretary of State of the State of Alabama and copies of the amended summons and complaint were sent to the defendants by registered mail to the aforesaid post office address and return receipts were received back in the office of the Secretary of State of the State of Alabama, properly signed by the defendants.

The defendants appeared specially and separately filed their motions to quash the aforesaid service or attempted service of the summons and complaint on the ground that the defendants were not doing business in the State of Alabama at the time of the aforesaid service or at any time prior thereto within the meaning of Title 7, § 199(1), 1955 Cumulative Pocket Part, Code of 1940. The deposition of Dr. J. B. King was taken by stipulation under § 474(1–18), Title 7, 1955 Cumulative Pocket Part, Code of 1940, in Tyler, Texas. The deposition of Henry W. Holland had been previously taken in Tyler, Texas, under the same statute prior to the first order of the trial court quashing service.

The motions of each defendant were heard and argued before the Hon. W. C. Warren, Judge of the Circuit Court of Tuscaloosa County, Alabama, and each motion was granted and service of the summons and complaint on each defendant was quashed on the ground that the evidence on the motion showed that the defendants were not doing business in the State of Alabama.

When the depositions of Dr. J. B. King and Henry W. Holland are read together we consider that they both substantially show in substance the following. Dr. J. B. King is the sole owner and operator of the King Laboratories of Tyler, Texas, and the product known as Pedolatum is the only product manufactured by King Laboratories. Pedolatum is a product for the removal of corns and calluses and has been approved by the Pure Food and Drug Administration of the Department of Education and Welfare of the United States. At one time it was contemplated that a distribution organization known as Pedolatum Distributors would be formed. However that distribution organization was never formed and if there is any such legal entity as Pedolatum Distributors, it is owned solely by Dr. J. B. King, the same party who is the sole owner of King Laboratories.

Pedolatum is not manufactured in large amounts. Some three or four men have at times sold Pedolatum with the entire United States as their territory. Henry W.

Holland, who has been heretofore mentioned is one of these men. These men purchased the product Pedolatum outright from King Laboratories and sold it at a profit. Dr. King furnished no transportation to any man selling Pedolatum, made no income tax deduction or social security deduction for any man selling Pedolatum, carried no workman's compensation insurance, health or accident insurance or any insurance of any kind whatsoever covering the men selling Pedolatum, did not pay any travel expense whatsoever of the men selling Pedolatum, these men selecting their own methods or means of selling and choosing their own territory out of the entire United States and King Laboratories exercised no control over the methods used by these men.

King Laboratories is a small one man operation with only three or four men selling Pedolatum within the entire United States, each in their own territory. The sales in Alabama are casual and occasional only.

None of the defendants on whom service was attempted maintain any office in Alabama, had any warehouse in Alabama, owned any property in Alabama, had any place of business whatsoever in Alabama, had any distributor, manufacturer's agent or similar connection in Alabama.

The defendant Dr. J. B. King had been a resident of the State of Texas for 17½ years prior to the time that his deposition was taken. What few orders were sold in Alabama were sold either by one of the three or four men who came into Alabama and took orders for the product, sent the orders to Tyler, Texas, subject to acceptance there and the product was then sent by mail to the buyer into Alabama. If the purchaser wished to pay for the product the payment would be retained by the salesman and the balance, less the commission, would be remitted to Dr. King. This was done at no particular intervals. The defendants had no connection whatever with the State of Alabama other than the occasional sale of the product Pedolatum in the nature and manner stated above.

We think it well at this point to refer more specifically to the testimony of Henry W. Holland because his deposition was introduced in evidence by the petitioner and is emphasized by the petitioner. Henry W. Holland testified that he was compensated on a commission basis and that he did not receive any compensation whatever other than a commission. He also testified that with reference to the two or three salesmen who had the entire United States as their territory, they were paid in the same manner as he was paid.

He further testified that there was a written contract with Dr. King covering the terms of the relationship with him and the other salesmen but that it had not been signed but also that it was the agreement under which they operated with Dr. King. The contract which provided for a partnership between him and Dr. King and three others provided that "each of the partners, except Dr. J. B. King, shall purchase said deals from his own personal funds and resell such deals at the price of $8 per deal making delivery of such products at the time of such sale and such seller shall then retain as his own personal funds the $4.00 profit. * * *." A deal is described in the contract as consisting of "proper pack and 16 jars of Pedolatum."

He testified further that Dr. King did not subtract from their commission the withholding or social security tax that is required to be paid to the Federal government, that he had filed a United States Income Tax return for the period during which he had his relationship with Dr. King, that he did not report any withholding or social security, that he did not list himself as being employed by anyone, that he had never been furnished with a W–2 statement, that he was not covered by a policy of workman's compensation insurance or by a policy or a group policy of health, accident or life insurance, that he was not paid any travelling expenses by

Dr. King and that all the expense of travel which he had in the sale of Pedolatum was borne entirely by himself. He further testified that he travelled entirely by automobile, that there was no particular form of advertising of the product in the State of Alabama, that the three or four men who sold Pedolatum simply purchased Pedolatum from Dr. King and then resold it at a profit.

Henry W. Holland further testified that he traveled in his own automobile but this was his own choice. He testified that while he was required to have an automobile, the automobile belonged to him and was operated by him at his own expense. The automobile was covered by liability insurance, but neither Dr. King nor the King Laboratories was named as one of the insureds. It will be noted that the testimony relative to the automobile is not in accordance with the testimony of Dr. King and the socalled partnership contract. Both the testimony of Dr. King and the socalled partnership agreement show that the salesman, if he used an automobile, was to carry liability insurance at the salesman's expense. Both the testimony of Dr. King and Mr. Holland shows that there was no partnership in existence at any time.

The plaintiff Mrs. Laura H. Emerson filed her petition in this court praying for an alternative writ of mandamus ordering the respondent, the Hon. W. C. Warren, to enter an order vacating and setting aside the order made by him in which he granted the defendants' motions to quash service of process in the aforesaid cause now pending in the Circuit Court of Tuscaloosa County, Alabama, to which we have heretofore referred. This court granted a rule nisi.

It is the insistence of the respondent that neither defendant is amenable to service of process out of an Alabama court and that the transportation and delivery of out of state goods by a nonresident of the state to a local party on orders either taken in Alabama or through mail to Tyler, Texas, were acts of interstate commerce to which the laws of Alabama are not applicable and that each of the defendants on whom service was attempted were immune from state interference or regulation and that neither defendant had any connection with the State of Alabama sufficient to make either defendant subject to service of process under § 199(1), Title 7, 1955 Cumulative Pocket Part, Code of 1940. The respondent further seriously insists that a writ of mandamus should not be issued in this case since the petitioner has other adequate legal remedies.

I. Section 214, Title 7, Code of 1940 provides that all motions which are made in writing in any circuit court in any cause or proceeding at law, shall, upon appeal become a part of the record, and this statute further provides that the ruling of the court thereon shall also be made a part of the record and that the motion and ruling thereon shall constitute a part of the record proper on appeal.

Section 819, Title 7, Code of 1940 provides that where it becomes necessary for the plaintiff to suffer a nonsuit, the facts, point, ruling or decision may be reserved for the decision of the appellate court by bill of exceptions or by appeal on the record as in other cases.

■ It is well established in this state that before a petitioner is entitled to a writ of mandamus, the petitioner must show a clear, obvious legal right for the enforcement of which there is no other adequate legal remedy. Poyner v. Whiddon, 234 Ala. 168, 174 So. 507.

In Ex parte Hill, 165 Ala. 365, 51 So. 786, this court held that where the trial court had sustained a motion to quash service, there was no way to review this ruling by appeal, and, therefore, mandamus was the proper remedy. However, this was prior to the enactment of § 214, Title 7, Code of 1940.

In Ex parte John H. Helveston, 267 Ala. 94, 100 So.2d 7, 8, with reference to the

aforesaid case of Ex parte Hill, this court said:

"In the Hill case, supra, the trial court sustained a motion to quash service, which was erroneous. This Court held that there was no way to review it by appeal and therefore mandamus was the proper remedy. Section 214, Title 7, Code, had not then been enacted. Under it, and the principle contained in section 242, Title 7, Code, the ruling may now be reviewed on appeal from the final judgment. That seems to eliminate the argument used in the Hill case."

Is the principle laid down in Ex parte John H. Helveston, supra, applicable in the instant case? We do not think so. In Ex parte Helveston, supra, it was sought to review a ruling made by the court denying a motion of petitioner to quash service on him as defendant in a suit of law. It was inferentially held, that under § 214, Title 7, Code, and the principle contained in § 242, Title 7, Code of 1940, the ruling may now be reviewed on appeal from the final judgment.

■ But in the instant case the court granted the motion to quash the service. This ruling put the plaintiff out of the jurisdiction of the court. See Ex parte Hartwell, 238 Ala. 62, 188 So. 891. The plaintiff could not plead over and therefore has no remedy under § 242, Title 7, Code of 1940, as held in Ex parte Helveston, supra. Furthermore the petitioner could not take a nonsuit from the order with a right of appeal because § 819, Title 7, Code of 1940, applies only to rulings upon pleadings, admission or rejection of evidence or upon charges to the jury. Corn Products Refining Co. v. Dreyfus, 3 Ala.App. 529, 57 So. 517; Davis v. Louisville & Nashville R. Co., 14 Ala.App. 200, 69 So. 231.

■ Obviously the order granting the motion to quash the service is not such a final judgment in itself as will support an appeal.

Since the petitioner has no remedy by appeal, she has no adequate remedy at law to review the action of the court granting the motion to quash and therefore the only remedy which she now has is a review by mandamus. We shall accordingly proceed to review the case by mandamus.

II. In the case of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, three principles were established as required by the due process clause of the 14th amendment: (1) a personal judgment is void if it is rendered by a court which has no jurisdiction over the defendant. (2) A court has no jurisdiction to render a personal judgment against a nonresident defendant merely because he owns property within the forum and (3) if a court has no jurisdiction over a nonresident defendant, it cannot acquire jurisdiction merely by serving process upon him outside of the forum or by publication. The doctrines of Pennoyer v. Neff, supra, have been changed by recent decisions of the Supreme Court of the United States by expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents, which subjects foreign corporations or others to suits within the state even though the nonresident cannot be served with process personally within the state.

In order to show the trend away from the principles established in Pennoyer v. Neff, supra, we refer to McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057.

In Boyd v. Warren Paint & Color Co., 254 Ala. 687, 49 So.2d 559, 560, this court said:

"In determining the question, we are not here concerned with state law, since it is not controlling. The issue is regarded in this jurisdiction as a federal question of whether subjection of the defendant to this sovereignty comports with federal due process. * * * As was said in Ford Motor Co. v. Hall Auto Co., supra (226 Ala.

385, 147 So. 603), 'It is recognized that the federal authorities are controlling on questions entering into the inquiry and ascertainment of the facts (1) of doing business, and (2) of authorized agency on which process must be served, or (3) those of due process, equal protection, and interstate commerce. * * *.' "

It may be noted that in Boyd v. Warren Paint & Color Co., supra, this court under the factual situation shown in that case held that under the principles set forth in International Shoe Co. v. State of Washington, supra, the defendant, a foreign corporation not qualified to do business in the state, was amenable to the jurisdiction of the courts of this state. It may also be noted that in Ex parte Smith, 258 Ala. 319, 62 So.2d 792, 795, this court said in reference to service on nonresident motorists (§ 199, Title 7, 1955 Cumulative Pocket Part, Code of 1940), "When those matters appear of record in the cause they show on the face of the proceeding a sufficient service on the defendant to support a personal judgment against him as if personally served within the State." This court then went on to equate the service on nonresident motorists (§ 199) with service on nonresidents who do business in the state (§ 199 (1), Title 7, 1955 Cumulative Pocket Part, Code of 1940).

From our study of the evidence in this case we do not think it necessary for us to deal with the decisions and statutes which have expanded or changed the doctrines of Pennoyer v. Neff, supra. This case was submitted to Judge Warren on a deposition of Dr. J. B. King and a deposition of H. W. Holland. It is our opinion that this testimony shows that the men selling Pedolatum in Alabama were either selling a product which they had purchased or were independent contractors and therefore Dr. J. B. King was not doing business within the State of Alabama. It is true that H. W. Holland testified that his compensation was on a commission basis. But this is not a controlling factor. Al-

drich v. Tyler Grocery Co., 206 Ala. 138, 89 So. 289, 17 A.L.R. 617. It is also true that the product was sold at a price fixed by Dr. J. B. King but this in itself is not a controlling factor when considered with all the evidence in the case. As we view it the evidence shows that Pedolatum is not manufactured in large amounts. Some three or four men have at times sold Pedolatum with the entire United States as their territory. These men purchased the product Pedolatum outright from King Laboratories and sold it at a profit. Dr. J. B. King furnished no transportation to any man selling Pedolatum, paid no traveling expenses whatever of the men selling Pedolatum. Dr. J. B. King did not in any way select the route or choose the territory which these men covered and these men selected their own methods and means of selling the product.

We need not set out again all the facts shown by the evidence which we have set forth above. But taken together, in our judgment, the evidence does not show that control exercised by Dr. J. B. King over these salesmen or the reserved right of control which he had over them, which would be necessary to make them his servants. Aldrich v. Tyler Grocery Co., 206 Ala. 138, 89 So. 289, 17 A.L.R. 617; General Exchange Ins. Corp. v. Findlay, 219 Ala. 193, 121 So. 710.

The writ of mandamus is denied.

LIVINGSTON, C. J., and LAWSON, GOODWYN and MERRILL, JJ., concur.

COLEMAN, Justice (dissenting).

I concur in the holding that the ruling of the circuit court which granted the motion to quash may be reviewed by mandamus.

I do not concur in the holding that the defendant Dr. J. B. King was not doing business in Alabama within the meaning of the statute which appears in 1955 Cumulative Pocket Parts of the Code of 1940 as

§ 199(1) of Title 7. Reference is there made to the Acts of the Legislature: 1949, page 154; 1951, page 976; and 1953, page 347.

It may well be that the men who were engaged in taking orders for "pedolatum deals" were not servants of Dr. King so as to make him liable for their torts under the doctrine of respondeat superior. That such men were agents, however, appears to me as the correct conclusion to be drawn from the depositions, particularly from that of Henry W. Holland who testified that he had been engaged in selling pedolatum. Holland deposed as follows:

"Q. What sort of record was kept of the products that you would take with you? A. The number of dozens was entered into a ledger book, as to the number I took.

"Q. Whose ledger book was that? A. Dr. King's ledger book.

"Q. Does he have that ledger book in his possession? A. He does

"Q. This ledger book, what was its general title? Did it have any name that applied to it? A. I don't believe it does have any title. It is a very simple thing, shows my name at the top of the page with the number of pedolatums that I have taken from Dr. King and the number that I have accounted for.

"Q. What did you do with the ones that you did not account for—remit to Dr. King? A. I haven't missed accounting for any. I always account for them.

"Q. In other words, if you sold them, you turned the money over to Dr. King? A. That's right.

"Q. Did you ever use any of them or portions of them for demonstrations, where you didn't have to pay for them? A. No.

"Q. In other words, every jar that you took had to be paid for? A. That's right.

"Q. And has been paid for? A. Yes, sir.

"Q. Did you deliver any of these where you sold them on a charge basis —did you deliver any of that supply? A. I believe I have.

"Q. In other words, assume I am a retail druggist in the state of Alabama, and you—whom you think is a reputable druggist, and you sell me a dozen jars, and I want them charged, I sign the order blank and you deliver the dozen jars and then Dr. King would bill me; is that the way it worked? A. That's right, yes, sir.

"Q. So that Dr. King would get paid for the supply that you would have and which he had not shipped, but which you carried into Alabama, he would get paid either by your making cash sales or remitting to him or by virtue of his being paid in due course by charging the individual druggist? A. Sir, I paid for the stocks that I had with me.

"Q. You paid for the stock that you carried with you? A. Yes, sir.

"Q. How would you get reimbursed then for those that were given to druggists and were charged on a charge account? Would Dr. King reimburse you then, or give you credit for it? A. Dr. King reimbursed me; would give me credit for that."

Dr. King testified that the men selling pedolatum had purchased it from him, but the evidence clearly shows that orders were sent in by the men engaged in selling and were charged against the purchaser who later paid to Dr. King, either directly or through one of the men who made collections. The record shows that five retail drugstores in Tuscalosa bought pedolatum at least one time in the year

1958. As I read the record, the men selling pedolatum were agents authorized to sell for Dr. King in Alabama and, within the meaning of § 199(1), Title 7, Code 1940, as amended, and under the doctrine of the later federal cases, Dr. King was subject to the jurisdiction of the courts of Alabama. Boyd v. Warren Paint & Color Co., 254 Ala. 687, 49 So.2d 559.