**KING & HATCH, INC., Plaintiff-Appellee,**

v.

**SOUTHERN PIPE & SUPPLY COMPANY, Inc., Defendant,**

and

**Wagoner Corporation, Defendant-Appellant.**

No. 28503.

United States Court of Appeals, Fifth Circuit.

Dec. 10, 1970.

Thomas B. Huie, Henry E. Simpson, Birmingham, Ala., for defendant-appellant; Lange, Simpson, Robinson & Somerville and Huie, Fernambucq & Stewart, Birmingham, Ala., of counsel.

David J. Vann, Chervis Isom, Sirote, Permutt, Friend & Friedman, William G. West, Jr., Birmingham, Ala., for plaintiff-appellee; Berkowitz, Lefkovits, Vann & Patrick, Birmingham, Ala., of counsel.

Before JOHN R. BROWN, Chief Judge, BELL and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

In this diversity action filed against Southern Pipe & Supply Co., Inc., a cor-

poration organized and existing under the laws of Mississippi, and Wagoner Corporation, organized and existing under the laws of the State of Tennessee, we review by way of interlocutory appeal an order of the court below denying the motion of Wagoner Corporation to quash service of process accomplished pursuant to Alabama's long-arm statute.[1]

According to the complaint, the plaintiff, King & Hatch, Inc., is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Fort Walton Beach, Florida. The cause of action asserted below arose out of the sale of 116 electric water heaters manufactured by the defendant Wagoner Corporation and sold by the defendant Southern Pipe & Supply to the plaintiff for its use in the construction of an apartment complex in Homewood, Alabama, a suburb of Birmingham. Plaintiff, as general contractor, is seeking damages against the named defendants for breach of contract and/or warranty resulting from the alleged malfunction of the water heaters in question.

From the motion of Wagoner Corporation to quash service of process and the affidavits and depositions filed in response thereto, the following facts appear.

Wagoner, a Tennessee corporation with its principal place of business in Nashville, Tennessee, manufactures gas and electric water heaters, which it sells through manufacturers' agents to local distributors, plumbers and dealers. It appears undisputed that Wagoner Corporation was not qualified to do business in Alabama, it had no designated agent in Alabama for service of process, nor did it have any office, property, telephone listing, warehouse or any other place of business within the state. However, in contrast to this seeming detachment from the State of Alabama are certain relevant contacts by Wagoner Corporation to be discussed.

As this court has previously stated, "In considering the validity *vel non* of substituted service of process to effect jurisdiction over a party, each case must be decided on its own facts and under the law of the forum state." Tetco Metal Products, Inc. v. Langham, 387 F.2d 721, 722 (5th Cir. 1968).

The Supreme Court of Alabama has consistently recognized that the issue of jurisdiction pursuant to substituted service of process under Alabama's long-arm statute is not controlled by state law but rather poses a federal question of whether subjection of the nonresident defendant to the sovereignty of Alabama comports with federal due process. Boyd v. Warren Paint & Color Co., 254 Ala. 687, 49 So.2d 559 (1950). And again in New York Times Co. v. Sullivan, 273 Ala. 656, 144 So.2d 25 (1962), rev'd on other grounds, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1963), and reiterated in In Re Martin, 281 Ala. 135, 199 So.2d 836 (1967), the Alabama Supreme Court indicated that "the scope of substituted service [under Title 7, § 199(1)] is as broad as the permissible limits of due process." 144 So. 2d at 34. We thus examine the contacts of Wagoner Corporation with the State of Alabama consonant with the pronouncements of that State's highest court.

Wagoner Corporation water heaters are sold to Alabama wholesale distribu-

---

1. Title 7, § 199(1) of the Code of Alabama of 1940 as recompiled 1958 reads in pertinent part as follows:

"Any * * * corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall do any business or perform any character of work or service in this state shall, by the doing of such business or the performing of such work, or services, be deemed to have appointed the secretary of state * * * to be the true and lawful attorney or agent of such nonresident, upon whom process may be served in any action accrued or accruing from the doing of such business, or the performing of such work, or service, or as an incident thereto by any such nonresident, or his, its or their agent, servant or employee. * * *"

tors, plumbers and dealers through the offices of the manufacturer's representative. This representative regularly and systematically solicits business on behalf of Wagoner Corporation, as well as other manufacturers whom he represents. As the result of his activities and subsequent sales, the representative is paid a direct commission by Wagoner Corporation on the sale of its products within the State of Alabama. From the deposition testimony of Robert W. Lee, President and Treasurer of Jefferson Plumbers & Mill Supply Co., a distributor of Wagoner products in Birmingham, Alabama, it appears that delivery of Wagoner products to Jefferson Plumbers is frequently made in vans bearing the Wagoner Corporation name. It also appears from Mr. Lee's testimony that Wagoner furnishes brochures and sales materials to Jefferson Plumbers for distribution to prospective customers. Moreover, Wagoner Corporation reimburses Jefferson Plumbers in part for Wagoner product advertising in the Birmingham, Alabama, yellow pages telephone directory.

In the sale of the water heaters made the basis of this suit, the order originated with Nicole, Inc., the plumbing subcontractor of the plaintiff, through Southern Pipe and Supply Company, Inc., another distributor of Wagoner products with a wholesale outlet in Birmingham, Alabama. Wagoner Corporation filled the order and shipped the water heaters directly to the job site in Homewood, Alabama, via Wagoner transport.

Wagoner denies that its contacts with the State of Alabama, either from the sale of the water heaters in the instant case or from previous sales of its products within the State, are sufficient to render it amenable to Alabama's substituted service of process. Wagoner contends that this court's decisions in Davis v. Casco Products Corp., 381 F.2d 470 (5th Cir. 1967), and Tetco Metal Products, Inc. v. Langham, 387 F.2d 721 (5th Cir. 1968), as well as the decision by the Alabama Supreme Court in Ex Parte Emerson, 270 Ala. 697, 121 So.2d 914 (1960), are controlling and dispositive of the issue presented herein. We reject such contention. In Davis, the plaintiff sued the non-resident corporate defendant for the death of his infant son allegedly caused by the defendant's negligently manufactured electric heating pad. In affirming the district court's order quashing the substituted service of process, this court found that the defendant Casco's only connection with Alabama was the sale of its products through a Jacksonville, Florida brokerage agency. There was no finding of regular and systematic solicitation of business, nor did Casco make any direct commission payments to a manufacturer's representative as in the case at bar. More importantly, this court found that the facts presented in Ex Parte Emerson, *supra*, were so similar to those in Casco as to be controlling.

In Emerson, the non-resident defendant residing in Texas sold a drug product to three or four salesmen, who in turn resold the product at a profit throughout the United States, some of the sales occurring in Alabama. In denying a petition for mandamus to a lower court to require it to vacate its order quashing service of process, the Alabama Supreme Court found that the sales of the defendant's drug product in Alabama were casual and occasional only, that the defendant had no distributor, manufacturer's agent or similar connection in Alabama and no particular form of advertising occurred within the forum state. Clearly, Casco and Emerson are distinguishable from the instant case as is Tetco Metal Products, Inc., *supra*, wherein this court again relied on the Emerson decision.

From International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and its progeny, we conclude that subjection of the defendant, Wagoner Corporation, to the jurisdiction of an Alabama forum "does not offend 'traditional notions of fair play and substantial justice.'"; for Wagoner Corporation has "purposefully

[availed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

That Wagoner Corporation does not consider its manufacturer's representative as an agent or employee sufficiently endowed with the traditional indicia of the principal-agent or master-servant relationship so as to warrant the imposition of vicarious liability is of little moment to this court, for the crux of the matter is that the manufacturer's representative regularly and systematically solicited business on behalf of Wagoner Corporation with that company's full knowledge, which resulted in a continuous flow of Wagoner products into the State of Alabama. Moreover, the manufacturer's representative was paid a direct commission by Wagoner on the sale of Wagoner products within the forum state.

Taken collectively, the contacts of Wagoner Corporation with the State of Alabama far exceed those "minimum contacts" which would allow Alabama to constitutionally compel Wagoner to defend this suit in the forum state.

Affirmed.