279 So.2d 518

**Ex parte Saul Hebert.**

**In re Saul HEBERT**

**v.**

**MILE HIGH EQUIPMENT COMPANY,**
a corporation, et al.

**Civ. 132.**

Court of Civil Appeals of Alabama.

June 6, 1973.

Hon. Hubert P. Robertson, pro se.

Louis E. Braswell, Mobile, for respondent Mile High Equipment Co.

Bert S. Nettles, Mobile, for petitioner.

BRADLEY, Judge.

Complaint was filed in the Circuit Court of Mobile County by Saul Hebert against Mile High Equipment Company (hereinafter referred to as Mile High) and Ice-O-Matic, Inc., which was merged into Mile High, seeking $10,000 damages for a breach of warranty. Defendant is a nonresident corporation, not qualified to do business in Alabama, and has no agent in this state for service of process. Its principal place of business is Denver, Colorado, where it manufactures ice-making equipment. The complaint was accompanied by a demand for a jury trial. Service of process on the defendants was obtained pursuant to Title 7, Section 199(1), Code of Alabama 1940, as Recompiled 1958, Alabama's "long arm" statute. Mile High filed a motion to quash service of process on the ground that the Circuit Court of Mobile County was without personal jurisdiction because Mile High had not done business in Alabama.

A hearing was held by the court on the motion. Prior to commencement of the hearing, plaintiff asked for a jury trial of the motion to quash service of process. The request for a trial by jury on the motion was denied, and the hearing proceeded before the court sitting without a jury. At the conclusion of the hearing, the trial court quashed service of process, whereupon the plaintiff filed a petition in this court seeking the issuance of a writ of mandamus directed to the Honorable Hubert Robertson, judge of the Circuit Court of Mobile County requiring him to vacate his order quashing service of process on Mile High and to permit service on said defendant to be perfected. We issued the rule nisi and Judge Robertson answered. Submission here was had on briefs and oral argument.

The undisputed evidence shows that petitioner purchased an ice-making machine from Mile High through Coastal Fixture and Equipment Company of Mobile, Alabama. Coastal, which not having such machine in stock, placed the order with Mile High in Denver by telephone. It was shipped to Mobile by Red Ball Freight Company, a trucking firm, and installed by an agent of Coastal Fixture. At the time the machine was delivered, petitioner also received a written warranty stating that the machine was free from defects in material and workmanship, and providing for repairs or replacement of defective parts should they be needed. Sometime later the machine started to give trouble and petitioner notified Coastal. Shortly thereafter Mr. Lewis McMillan appeared and said he represented Mile High. He was accompanied to petitioner's place of business by Mr. Hardy, repairman for Coastal. Mr. McMillan recommended to Mr. Hardy what should be done. The parts which Mr. McMillan said should be replaced were replaced by Mr. Hardy at no cost to petitioner. Although Mr. McMillan did not make the sale, he received a commission from Mile High for the sale.

The general sales manager for Mile High testified that Mr. McMillan was a manufacturer's representative and did represent their company in Alabama along with several others. He said that occa-

sionally they would receive orders direct from customers of Mr. McMillan but that the bulk of the sales made in Alabama were not by direct orders.

He also stated that in 1969 sales in Alabama amounted to $207,531; in 1970 to $213,140; and in 1971 to $200,045. He said these sales were less than five per cent of their total sales.

It was also stated that Mile High had no office, plant or place of business in Alabama; does not manufacture any products in Alabama; does not have a warehouse in Alabama; does not own property in Alabama, nor does it have bank accounts or funds in Alabama; no employees live in Alabama nor did any of them come into Alabama to sell, repair or demonstrate its products; did not mail printed or written materials to any of its customers in Alabama during 1969, 1970 or 1971 except that in 1970 and 1971 it mailed price schedules to certain of its customers in Alabama.

The two assignments of error argued by petitioner contend that the trial court erred (1) in quashing service of process on Mile High and (2) in refusing to permit a jury trial of the motion to quash.

Petitioner argues that the trial court erred in not deciding, as a matter of law, based on the undisputed facts, that Mile High was subject to suit in the State of Alabama. He states, however, that should he be mistaken in this contention, that he was entitled to have a jury decide the factual question of whether Mile High was doing business in Alabama so as to authorize service of process through Title 7, Section 199(1), Code of Alabama 1940, as Recompiled 1958. We therefore conclude that an affirmative finding on the first contention would obviate a need to answer the second contention.

Consequently, we will concern ourselves with whether or not the facts show that Mile High did business in Alabama sufficiently to warrant service of process on it.

In Boyd v. Warren Paint & Color Co., 254 Ala. 687, 49 So.2d 559, the Supreme Court had before it a question of whether or not a foreign corporation, not qualified to do business in Alabama, was amenable to process through Alabama's long arm statute, i. e., Title 7, Section 199(1), Code of Alabama 1940, as Recompiled 1958. The court said:

"In determining the question, we are not here concerned with state law, since it is not controlling. The issue is regarded in this jurisdiction as a federal question of whether subjection of the defendant to this sovereignty comports with federal due process. [Citations omitted.] As was said in Ford Motor Co. v. Hall Auto Co., 226 Ala. 385, 147 So. 603]: 'It is recognized that the federal authorities are controlling on questions entering into the inquiry and ascertainment of the facts (1) of doing business, and (2) of authorized agency on which process must be served, or (3) those of due process, equal protection, and interstate commerce. * * *' 226 Ala. 387, 147 So. 605.

"So, the question is whether appellee corporation was amenable to the jurisdiction of the court by reason of its activities in Alabama within the limitations of the due process clause of the Fourteenth Amendment and the authorities governing. We look then to the federal decisions for guidance.

\*     \*     \*     \*     \*     \*

"It is, of course, recognized that a state may not make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations, that is, where the defendant is not present in the state. But since a corporation must act vicariously and its presence in the state can only be manifested by the acts of its authorized agents, the question is to be determined by the activities of those agents and the character of business done. And each case must depend on its own facts.

\*     \*     \*     \*     \*     \*

"[T]he traditional theory, thought to be crystalized in federal jurisprudence, that personal jurisdiction over a foreign corporation cannot be acquired when the only basis is 'mere solicitation' of business within the borders of the forum's sovereignty, [citations omitted] seems to be no longer controlling. Recent federal decisions have considerably impinged upon that concept. [Citations omitted.]

"The rule that we deduce from these late decisions, of which International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 is the 'bellwether,' is that the regular and systematic solicitation of orders in the state by appellant's salesmen, resulting in a continuous flow of appellant's products into the state, is sufficient to constitute doing business in the state so as to make the corporate defendant amenable to suits in its courts, provided there be included in the inquiry the factor of estimating the inconvenience which would result to the corporation from a trial away from its home."

In King Homes, Inc. v. Roberts, 46 Ala. App. 257, 240 So.2d 679, this court also had before it a question of whether or not a foreign corporation not qualified to do business in Alabama was amenable to substituted service of process where it had sold a mobile home to an Alabama purchaser and suit was being pressed in Alabama for breach of warranty and we said:

"It is our opinion that the present trend is fair and proper. That a foreign corporation, not qualified to do business under the laws of this state, but who does do business by selling its products to residents of this state, directly or through dealers, and extends written warranties thereon, which are accepted by the purchaser in this state, such corporation should be subject to suit and judgment in personam upon service which provides notice and reasonable opportunity to appear and defend. To provide otherwise would be to deny the residents of this state an effective means of redress for purchase of inferior and defective products."

In King & Hatch, Inc. v. Southern Pipe & Supply Co., 435 F.2d 43 (5 Cir. 1970), the U. S. Court of Appeals for the Fifth Circuit had before it a case involving Alabama's long arm statute, i. e., Title 7, Section 199(1), and the facts showed that a Florida corporation purchased some water heaters from a Tennessee corporation that manufactured water heaters and had them delivered to the job site in Homewood, Alabama. The water heaters malfunctioned and suit was brought in Alabama against the manufacturer for breach of warranty. In deciding the case the court said:

"The Supreme Court of Alabama has consistently recognized that the issue of jurisdiction pursuant to substituted service of process under Alabama's long-arm statute is not controlled by state law but rather poses a federal question of whether subjection of the nonresident defendant to the sovereignty of Alabama comports with federal due process. Boyd v. Warren Paint & Color Co., 254 Ala. 687, 49 So.2d 559 (1950). And again in New York Times Co. v. Sullivan, 273 Ala. 656, 144 So.2d 25 (1962), rev'd on other grounds, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1963), and reiterated in In re Martin, 281 Ala. 135, 199 So.2d 836 (1967), the Alabama Supreme Court indicated that 'the scope of substituted service [under Title 7, § 199(1)] is as broad as the permissible limits of due process.' 144 So.2d at 34. We thus examine the contacts of Wagoner Corporation with the State of Alabama consonant with the pronouncements of that State's highest court.

"Wagoner Corporation water heaters are sold to Alabama wholesale distributors, plumbers and dealers through the offices of the manufacturer's representative. This representative regularly and systematically solicits business on behalf of Wagoner Corporation, as well as other manufacturers whom he represents.

As the result of his activities and subsequent sales, the representative is paid a direct commission by Wagoner Corporation on the sale of its products within the State of Alabama. . . . [I]t appears that delivery of Wagoner products to Jefferson Plumbers is frequently made in vans bearing the Wagoner Corporation name. It also appears . . . that Wagoner furnishes brochures and sales materials to Jefferson Plumbers for distribution to prospective customers. Moreover, Wagoner Corporation reimburses Jefferson Plumbers in part for Wagoner product advertising in the Birmingham, Alabama, yellow pages telephone directory.

"In the sale of the water heaters made the basis of this suit, the order originated with Nicole, Inc., the plumbing subcontractor of the plaintiff, through Southern Pipe and Supply Company, Inc., another distributor of Wagoner products with a wholesale outlet in Birmingham, Alabama. Wagoner Corporation filled the order and shipped the water heaters directly to the job site in Homewood, Alabama, via Wagoner transport.

"Wagoner denies that its contacts with the State of Alabama, either from the sale of the water heaters in the instant case or from previous sales of its products within the State, are sufficient to render it amenable to Alabama's substituted service of process. . . .

\*   \*   \*   \*   \*   \*

"From International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and its progeny, we conclude that subjection of the defendant, Wagoner Corporation, to the jurisdiction of an Alabama forum 'does not offend "traditional notions of fair play and substantial justice." ' ; for Wagoner Corporation has 'purposefully [availed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

"That Wagoner Corporation does not consider its manufacturer's representative as an agent or employee sufficiently endowed with the traditional indicia of the principal-agent or master-servant relationship so as to warrant the imposition of vicarious liability is of little moment to this court, for the crux of the matter is that the manufacturer's representative regularly and systematically solicited business on behalf of Wagoner Corporation with that company's full knowledge, which resulted in a continuous flow of Wagoner products into the State of Alabama. Moreover, the manufacturer's representative was paid a direct commission by Wagoner on the sale of Wagoner products within the forum state.

"Taken collectively, the contacts of Wagoner Corporation with the State of Alabama far exceed those 'minimum contacts' which would allow Alabama to constitutionally compel Wagoner to defend this suit in the forum state."

The court also said that one of the defendants had argued:

" . . . Wagoner contends that this court's decisions in Davis v. Casco Products Corp., 381 F.2d 470 (5th Cir. 1967), and Tetco Metal Products, Inc. v. Langham, 387 F.2d 721 (5th Cir. 1968), as well as the decision by the Alabama Supreme Court in Ex parte Emerson, 270 Ala. 697, 121 So.2d 914 (1960), are controlling and dispositive of the issue presented herein. We reject such contention. In *Davis*, the plaintiff sued the nonresident corporate defendant for the death of his infant son allegedly caused by the defendant's negligently manufactured electric heating pad. In affirming the district court's order quashing the substituted service of process, this court found that the defendant Casco's only connection with Alabama was the sale of its products through a Jacksonville, Florida brokerage agency. There was no finding of regular and systematic solici-

tation of business, nor did Casco make any direct commission payments to a manufacturer's representative as in the case at bar. More importantly, this court found that the facts presented in Ex parte Emerson, *supra,* were so similar to those in *Casco* as to be controlling.

"In *Emerson,* the non-resident defendant residing in Texas sold a drug product to three or four salesmen, who in turn resold the product at a profit throughout the United States, some of the sales occurring in Alabama. In denying a petition for mandamus to a lower court to require it to vacate its order quashing service of process, the Alabama Supreme Court found that the Sales of the defendant's drug product in Alabama were casual and occasional only, that the defendant had no distributor, manufacturer's agent or similar connection in Alabama and no particular form of advertising occurred within the forum state. Clearly, *Casco* and *Emerson* are distinguishable from the instant case as is Tetco Metal Products, Inc., *supra,* wherein this court again relied on the *Emerson* decision."

The relevant facts in the case at bar show that Mile High through an agent, albeit not the type of agent thought of in the principal-agent, master-servant type of relationship, actively and continuously solicited the sale of its products in the State of Alabama, and as a result of that solicitation, its products flowed into the State of Alabama continuously from 1969 to the time of the filing of this lawsuit. This agent also received a commission on all of the sales made of said company's products in Alabama whether he made the sales or someone else made them. Furthermore, he held himself out to petitioner as a· representative of Mile High and attempted to carry out the terms of the warranty issued by said company to petitioner, i. e., he attempted to place the ice-making machine in good running order by replacing faulty parts with parts obtained from the company.

Based on these contacts with the State of Alabama, we consider that Mile High has availed itself of the privilege of doing business in Alabama by selling its products to citizens of this state and extending written warranties thereon which have been accepted by the purchasers thereof; hence it is subject to the jurisdiction of the Circuit Court of Mobile County obtained through service of process made pursuant to the provisions of Section 199(1), *supra.* Also see the recent case of McCoy Lumber Industries, Inc. v. Niedermeyer-Martin Co., decided on March 1, 1973 by the U. S. District Court for the Middle District of N. C., 356 F.Supp. 1221 (Ms.) where the only contacts with the forum state were made by telephone calls and letters sent through the U. S. mails.

In answer to Mile High's contentions that the cases of *Davis, Tetco* and *Emerson* require a different result, we would say that we consider these cases distinguishable from the case at bar and therefore not dispositive of the question now before us, as did the Fifth Circuit in its analysis of the cited cases in its case of *King & Hatch, Inc., supra.*

We therefore conclude that the trial court misapplied the law to the facts in this case. That court therefore erred in quashing service of process on Mile High. The writ of mandamus is due to be awarded.

If, upon advice of this decision, the trial court does not enter an order expunging its order quashing service of process, and enter in lieu thereof an order denying the motion to quash, a writ to effectuate such ends will issue on request of the petitioner.

Let the writ of mandamus issue conditionally.

WRIGHT, P. J., and HOLMES, J., concur.