301 So.2d 183

The **QUALITY SCHOOL PLAN, INC.,**
a corporation

v.

**STATE of Alabama.**

**Civ. 310.**

Court of Civil Appeals of Alabama.

June 19, 1974.

Rehearing Denied Aug. 19, 1974.

C. Lee Reeves, Birmingham, for appellant.

William J. Baxley, Atty. Gen., Willard W. Livingston, Counsel, Dept. of Revenue, and Asst. Atty. Gen., B. Frank Loeb, Asst. Counsel, Dept. of Revenue, and Asst. Atty. Gen., for the State.

**BRADLEY, Judge.**

The Department of Revenue of the State of Alabama (hereinafter called "State") entered a final assessment against Quality School Plan, Inc., a corporation, (hereinafter referred to as "QSP") for use taxes in the amount of $35,992.16 for the period July 1, 1965 through June 30, 1968. QSP appealed this use tax assessment to the Circuit Court of Montgomery County where, after a hearing, the assessment was affirmed. QSP has perfected its appeal from said judgment to this court.

The facts reveal that QSP was a Delaware corporation doing business in Alabama through two sales representatives. These representatives would call on high school and junior high school principals and attempt to sell them on a plan whereby the schools through student salesmen could earn money by selling magazine subscriptions. As an added incentive to the student salesmen, prizes were given by QSP to the students achieving top sales.

The schools agreeing to undertake the sales of magazine subscriptions would be furnished materials such as collection envelopes, brochures listing the names of the magazines to be sold, sales order forms, instruction sheet forms, summary report forms, etc. by QSP. All orders for subscriptions to magazines received by the student salesmen also would be sent to QSP. The money collected from the sales of magazine subscriptions would be sent to QSP after the commission due the student salesmen was deducted. QSP would then forward the orders and money to the various magazine publishers and receive back its previously agreed on fee for the sales.

The copy of the subscription form given to the customer by the student salesman had imprinted on it a directive that all inquiries concerning the magazine subscriptions should be made to QSP at its Pleasantville, New York office.

The trial court in its opinion found that QSP was an out-of-state dealer or vendor with the duty to collect use tax as directed by Title 51, Sections 790(c) and 792(c), Code of Alabama 1940, as Recompiled 1958. QSP contends that it is not a vendor of magazine subscriptions, but is a seller of services, not tangible personal property. QSP also argues that the imposition upon it of the duty of collecting Alabama use tax violates the due process and commerce clauses of the fourteenth amendment, U. S. Constitution and the due process provisions of the Alabama constitution.

Title 51, Sections 790(c) and 792(c), *supra*, provide that:

> "Every seller engaged in making retail sales of tangible personal property for . . . use . . . in this state, who: . . . (c) solicits and receives purchases or orders by agent or salesman, . . ."

shall remit to the State the use tax thereon.

QSP argues that it does not come within the purview of the above statutes for the reason that it did not make a sale of tangible property through an agent or salesman. It says that the subscriptions were sold by students and the sales were accepted by the publishers of the magazines.

Further, QSP says that it merely furnished advice to the various schools and its students on methods for fund raising.

The evidence is without dispute that QSP's employees would go to various schools in Alabama and encourage the sale of magazine subscriptions by student salesmen. It is also unquestioned that the device used by QSP's agents to encourage the schools to undertake the sale of magazine subscriptions was the reward of additional money for use by the school and prizes to the student salesmen. All of the promotional literature was furnished by QSP; all of the forms for reporting orders and receipts were furnished by QSP; and all of the money received from the sale of subscriptions, less sales commissions, was sent to QSP. All of the transactions for the sale of subscriptions were between QSP and the various schools. QSP did forward to the various publishers the amount of the subscription price less the sales commission and then receive back from the publisher its fee as previously arranged.

Under these facts the conclusion is inescapable that QSP sold magazine subscriptions through student salesmen. Furthermore, there is no indication in the evidence that the sale made by QSP through its salesmen is other than a retail sale.

■ Additionally, QSP says that its relationship with the student vendors was not an agency arrangement and relies on Ex parte Emerson, 270 Ala. 697, 121 So.2d 914. *Emerson* does stand for the proposition that the principal must exercise or have the right to exercise control over the agent in order for there to be an agency relationship. However, we do not believe that the term "agent or salesman" as used in Sections 790(c) and 792(c) should be so restrictively interpreted, for the Supreme Court in Ex parte Newbern, 286 Ala. 348, 239 So.2d 792, said:

"We do not think the statute requires a 'legal relationship' between seller and solicitor. The main thrust of Title 51, § 792(c), supra, seems to us simply to re-

quire solicitation of orders for the seller by persons within the state who are characterized as 'agents or salesmen.' We do not think that the legislature intended a seller conducting such solicitation to avoid collecting the use tax merely by showing that its salesmen failed to come within some technical definition of 'salesman' or lacked some legal relationship with the out-of-state seller not articulated in the statute."

Construing the term "agents or salesmen" in the light of Ex parte Newbern, we believe a sufficient relationship has been shown between QSP and the Alabama schools to warrant us in concluding that a valid agency existed between QSP and the various schools it solicited to sell magazine subscriptions and that the students selling the subscriptions were its "salesmen."

QSP argues that the factual situation in the case at bar is controlled by the recent supreme Court case of State v. MacFadden-Bartell Corp., 280 Ala. 386, 194 So.2d 543. In that case a New York based corporation (MacFadden-Bartell) sold magazines to an Alabama Corporation (EBSCO). The Alabama company in turn sold the magazines to various individuals in Alabama. The Supreme Court held that MacFadden-Bartell was not liable for the use tax. The court said that EBSCO was operating its own separate business. That is not the situation here. Further, MacFadden had no agents as salesmen in the state nor did it have any contacts with EBSCO other than through the mails. QSP had two resident fulltime employees in Alabama plus the student salesmen. Finally, the court concluded that EBSCO was purchasing a subscription wholesale and selling retail, and, therefore, MacFadden could not be said to be making retail sales as are required by the statute. There was no evidence in the case at bar that the magazine subscription sales were other than at retail. Consequently, we do not believe that *MacFadden-Bartell* is apt authority for the case at bar.

■ QSP also says that a magazine subscription is not tangible personal property.

We have been unable to find an Alabama case specifically so holding, although there is language in *MacFadden-Bartell* suggesting this result. However, the Illinois Supreme Court in Time, Inc. v. Hulman, 31 Ill.2d 344, 201 N.E.2d 374, unequivocally held that the sale of magazine subscriptions was the sale of tangible personal property.

We therefore conclude that QSP sold tangible personal property in Alabama through its student salesmen as contemplated by Sections 790(c) and 792(c), *supra*.

QSP next argues a denial of due process for the reason that the State failed to prove a sufficient nexus with Alabama to warrant imposing a use tax.

■ The U. S. Supreme Court in Scripto, Inc. v. Carson, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660, established two criteria for making such a determination: (1) the burden for the tax to be placed on the ultimate consumer in the taxing state; and (2) that the seller have agents representing it. Under our statute QSP had the burden of collecting the tax from the purchaser of the subscriptions. Secondly, it maintained two fulltime employees in Alabama and, under our construction of the facts in this case, the schools were its agents. Hence, under the authority of Scripto, Inc., as applied in this state by Ex parte Newbern, we conclude QSP's due process rights have not been violated.

■ Appellant contends that the imposition of the use tax in this case violates its first amendment freedom of the press rights. This issue was not presented to the trial court and appears for the first time on this appeal. Review is here precluded for the reason that the question was not first presented to the trial court. State v. Wallis, 48 Ala.App. 652, 267 So.2d 172.

■ QSP next says that the use tax assessment is violative of the congressional right to regulate commerce. The U. S. Supreme Court in Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, said:

"It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business. 'Even interstate business must pay its way,' Postal Telegraph-Cable Co. v. Richmond, 249 U.S. 252, 259, 39 S.Ct. 265, 266, 63 L.Ed. 590; Ficklen v. Shelby County Taxing Dist., 145 U.S. 1, 24, 12 S.Ct. 810, 36 L.Ed. 601; Postal Telegraph Cable Co. v. Adams, 155 U.S. 688, 696, 15 S.Ct. 268, 360, 39 L.Ed. 311; Galveston, H. & S. A. Ry. Co. v. Texas, 210 U.S. 217, 225, 227, 28 S.Ct. 638, 52 L.Ed. 1031, and the bare fact that one is carrying on interstate commerce does not relieve him from many forms of state taxation which add to the cost of his business. . . ."

The court also said that no state can tax the privilege of doing an interstate business. In the instant case we do not perceive any effort on the part of the State to tax interstate business. It was also said in General Trading Co. v. State Tax Comm. of Iowa, 322 U.S. 335, 64 S.Ct. 1028, 88 L.Ed. 1309, and relied on in *Scripto, supra*:

". . . On the other hand, the mere fact that property is used for interstate commerce or has come into an owner's possession as a result of interstate commerce does not diminish the protection which he may draw from a State to the upkeep of which he may be asked to bear his fair share."

■ When property comes to rest in a state, though it may come through interstate commerce, it is permissible for a state to tax that property, Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814. Based on these authorities, we do not believe there has been a violation of the U. S. Constitution as it relates to interstate commerce.

No reversible error having been argued, this case is affirmed.

Affirmed.

WRIGHT, P. J., and HOLMES, J., concur.