BRADLEY, Judge.
The appellant, State of Alabama, appeals from a lower court holding in favor of Perfect Subscription Company, Inc. (hereinafter referred to as “Perfect” or “taxpayer”), the appellee in this case. We reverse.
The Department of Revenue of the State of Alabama (hereinafter referred to as “State”) entered three final assessments *57 against Perfect for use taxes in the amounts of $4,204.17 for county use tax; $7,966.73 for city use tax; and $29,851.87 for state use tax. The actions were consolidated and submitted to the Montgomery County Circuit Court on appeal. The lower court reversed the assessment finding, that the sales of magazine subscriptions by Perfect to the various Alabama schools were wholesale sales and therefore not subject to the use tax. The State filed a timely appeal from this judgment.
The evidence reveals that Perfect is a Delaware corporation which operates out of its principal office in New Jersey. Perfect enters into contracts with persons designated as “franchisees.” These franchisees call upon the various schools in Alabama and present fund-raising programs through student sales of magazine subscriptions.
Perfect provides all the materials and forms needed for the drive which include student sales booklets, student order forms, remit (summary) reports, and collection envelopes.
The record shows that in the sales booklet, the magazines represented by Perfect are listed, as well as the prices and special offers provided for a specific period of time.
Sixty percent of the sales price is normally received by Perfect. Perfect sends forty percent to the school after the remit audit confirms the records.
There are three copies of the order form, consisting of a white one (original) which is sent to Perfect, a yellow one which is retained by the school or school organization, and a pink one which is given to the subscriber. On the back of the subscriber’s form it is stated that if full service is not received by the customer, Perfect will refund the money for any undelivered portion of the order. Perfect’s address is given, as well as the person to whom inquiries should be directed, and the purchaser of the subscription is particularly admonished not to contact the school about the subscription.
The issue before this court is whether the magazine subscription sales constitute retail or wholesale sales to Alabama subscribers through school students.
The trial court concluded that Perfect had made wholesale sales which were not subject to the use tax. The relevant statutory definition of a wholesale sale is found in § 40-23-60(4)a, Code of Alabama 1975:
a. A sale of tangible personal property by wholesaler to licensed retail merchants, jobbers, dealers or other wholesalers for resale and does not include a sale by wholesalers to users or consumers, not for resale;
The trial court relied upon State v. Monk & Associates, Inc., 57 Ala.App. 303, 328 So.2d 306 (1976) for its decision. In that case we found that candy sold to schools for resale in fund-raising projects constituted wholesale sales. However, our reason for holding that the sale of candy to the schools was not taxable was because § 40-23-2, Code of Alabama 1975, exempts such sales by schools from the sales tax.
Perfect contends that Monk controls the present case as there was a sale of magazine subscription rights to the schools. We find Monk to be distinguishable. In Monk the candy was sold to the schools and the schools were responsible for remitting an agreed-upon percentage of the proceeds of the sale price if the candy was not returned. In other words, even if candy was not sold, but was stolen, lost or destroyed, the schools were still responsible for paying for the candy. In addition, in Monk there were no franchisees overseeing the fund-raising as there was in the case at bar. The record indicates that the Perfect franchisees would make frequent calls on the schools and instruct the students, as well as furnishing materials and supplies. Perfect supplied the student salesmen with order forms for the subscriptions which stated that Perfect would refund a subscriber’s money for any undelivered portion of a subscription order. The form provided by Perfect also requested that a subscriber not contact the school. We think it evident that Perfect exercised a great deal more control over the sale of magazine subscriptions than did the wholesaler of the candy in Monk. Therefore we think the instant case to be governed by *58 Quality School Plan, Inc. v. State, 53 Ala. App. 418, 301 So.2d 183, cert. den., 293 Ala. 771, 301 So.2d 187 (1974) instead of Monk.
In Quality we held that the sale of subscription rights through student salesmen were retail sales and were therefore not exempt under the statute. The facts in Quality are nearly identical to the case at bar. Representatives of Quality would go to the various schools and promote the sale of magazine subscriptions to be used as a fund-raising device. The schools could earn money by selling subscriptions through student salesmen. Quality furnished the schools with all the necessary forms and materials. All orders for subscriptions to magazines would be sent to Quality. The schools would send Quality the agreed-upon percentage of the subscriptions sold and retain the balance of the sales price. The copy of the order form given the subscriber also provided that all inquiries concerning the subscriptions should be directed to Quality. The only possible factual distinction between Quality and Perfect is that Perfect referred to its employees who called on the schools as “franchisees” whereas Quality called such employees “representatives.” However, we would note that the trial court found in its findings of fact that it was Perfect that sold magazine subscriptions to the schools. We think the trial court obviously concluded that there was little difference between a Perfect franchisee and a Quality representative. We would agree.
Another case involving the question of whether magazine subscriptions should be treated as a retail or wholesale sale was State v. MacFadden-Bartell Corp., 280 Ala. 386, 194 So.2d 543 (1967). In that case our supreme court held that MacFadden-Bar-tell, a New York corporation, was not liable for use tax on sales of magazine subscriptions made in Alabama through EBSCO, an Alabama company located in Birmingham. The court noted that EBSCO was not paid a commission on the sales it made and had not solicited orders for MacFadden-Bartell. The court stated that EBSCO solicited business for a profit and if it were not for the very nature of magazine subscriptions, the merchandise bought by EBSCO could have been shipped to it for later retail sales just as any other merchandise might be.
In Quality we distinguished MacFadden-Bartell by pointing out, as the court had, that EBSCO was operating its own separate business and that MacFadden had no agents or salesmen in the state, nor did it have any contacts with EBSCO other than through the mails; whereas Quality had two resident full-time employees in Alabama plus the student salesmen. The same distinctions apply to Perfect. Perfect has agents or franchisees in Alabama, and as noted previously, has a great many contacts other than through the mail.
Based on the foregoing, we think the present facts to be factually dissimilar from Monk and MacFadden-Bartell. Rather, we consider the instant case to fit squarely within the holding in Quality. We therefore hold that the sales of magazine subscriptions by Perfect are not exempt from use tax under the appropriate statutes. Accordingly, the judgment of the trial court is reversed.
The trial court’s judgment recites that the several constitutional issues raised at trial were not ruled on by the trial court due to its conclusion that the magazine subscription sales were wholesale sales. Consequently, the cause is remanded so that the trial court can consider and rule on the constitutional issues which were properly presented to it.
REVERSED AND REMANDED WITH INSTRUCTIONS.
WRIGHT, P. J., concurs.
HOLMES, J., concurs in the result.