199 So.2d 836

**Ex parte Willie MARTIN.**

**3 Div. 229.**

Supreme Court of Alabama.

June 1, 1967.

Geo. B. Azar, Azar, Campbell & Azar, Montgomery, for petitioner.

Fred D. Gray and Gray & Seay, Montgomery, for respondent.

SIMPSON, Justice.

The petitioner filed suit in the Circuit Court of Montgomery County against Johnson Publishing Company claiming damages of $25,000 for the conversion of a picture (or the plaintiff's property right in such picture) of a malformed piglet belonging to the plaintiff. We are not here concerned with the sufficiency of the complaint which consists of several counts.

Plaintiff sought to perfect service on Johnson Publishing Company by substituted service on the Secretary of State under the provisions of Title 7, § 199(1). No objection is made that the procedure prescribed by that statute was violated. Thereafter Johnson appeared specially and for no other purpose questioned the effectiveness of the service of process on it under this section. Its plea in abatement and motion to quash service of process was sustained after evidence was taken on the issue raised, i.e. Johnson's susceptibility to service under this statute. Plaintiff then brought the issue here on petition for writ of mandamus.

This Court held in New York Times Company v. Sullivan, 273 Ala. 656, 144 So.2d 25, that the scope of "substituted service [under Title 7, § 199(1)] is as broad as the permissible limits of due process". It is assumed therefore that our statute is broad enough to reach Johnson under that construction if permissible under the due process clause of the 14th Amendment to the Constitution of the United States.

We are aware of the inroads which have been made upon the traditional concepts of in personam jurisdiction since the pronouncements in Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878). Subsequent cases from the Supreme Court of the United States defining the constitutional limita-

tions placed upon a state's ability to subject a non-resident defendant to its jurisdiction have departed from the strict requirement of presence within the state and service of process on the defendant within the territorial limits of the state. Later cases have held that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "-International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945). Further, in 1957, that court said in McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 that "[l]ooking back over this long history of litigation [since Pennoyer v. Neff] a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. * * * It is sufficient for purposes of due process that the suit was based on a contract [in Mc-Gee] which had substantial connection with that State." Our cases are consistent.-Boyd v. Warren Paint & Color Co., 254 Ala. 687, 49 So.2d 559.

Tested by these principles and the fact that this Court has said that our long arm statute is construed to extend to the limits permitted by the due process clause, let us examine the activities within the State of Alabama or contacts with the State of Alabama which petitioner contends permits this state to exercise in personam jurisdiction over the defendant in the case involved here. There must be such "minimum contacts so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

Admittedly this is an imprecise measure of the constitutional limitations placed on the states by the 14th Amendment. Do the facts in this case fall within or without that limitation?

### "Newsgathering Activities"

The record shows that Johnson Publishing Company is an Illinois corporation engaged in the publishing and distribution of magazines. It is not qualified to do business in Alabama. It has no office, no agent, no telephone, no property, no employee, no bank account, no records and pays no taxes within the State of Alabama. The material which it publishes in its magazines is obtained from dispatches of United Press International, from staff correspondents, none of whom are in Alabama, and from a number of "stringers" throughout the United States. Stringers are (as defined in *Sullivan,* supra) known in the publishing business as independent third parties who send unsolicited articles or photographs to publishing houses or newspapers throughout the United States. If the article submitted is accepted, the stringer is paid for it. If it is rejected he gets nothing. The stringer is not on the payroll of the publisher and no taxes, etc. are withheld by the publisher from the amount paid for an article accepted.

In this case the photograph claimed to have been converted by Johnson was made in Alabama by a photographer. He sent the photograph to Johnson in Chicago. He was identified as a stringer who takes pictures and from time to time sends them to a great many magazines and newspapers. Many have used his photographs, including Time, Life, Esquire, etc. He testified that in 1964 he sent this picture to Johnson in Chicago and it was accepted. He was never asked by Johnson to submit pictures or anything else. This is the only article he sent to Johnson in 1964. This is the extent of the evidence with respect to Johnson's "newsgathering" activities within the State of Alabama.

### "Advertising Activities"

The evidence was to the effect that the advertising in the magazines published by Johnson amounts to some 1,200 pages per year (in all magazines published, i. e. Tan,

Ebony, Jet, Negro Digest). Of that amount in any given year less than six pages are ads from Alabama (less than one-half of one percent), and of these "Alabama" ads the publisher had gotten all of the business from an advertising agency in New Orleans which represents Alabama advertisers, mostly manufacturers. Johnson deals with this New Orleans agency by mail and has never solicited any ads from the Alabama advertisers. The only ad they ever got from an Alabama advertiser directly was from the Gaston Motel in Birmingham and that has been unsolicited and sporadic.

### · "Distribution Contacts"

The magazines which Johnson publishes are sold to the public through distributors of magazines and newspapers. These are independent distributors and do not work for any particular publisher. Other than this Johnson sells magazines through direct mail subscription campaigns. The subscribers receive the magazines through the mail. The magazines are physically placed in the mails, etc. by the printer who is also an independent contractor. Schools and other organizations from time to time put on fund raising campaigns through the sale of magazine subscriptions. Some of these subscription-fund raising drives have included magazines published by Johnson. When that is done, and the evidence is that it is not often, the subscriber is sent his magazine through the mail. The school or other organization remits to the publishers a part of the subscription price and retains the balance as profit. There is no evidence that Johnson solicits organizations to sell its magazines in Alabama in this manner. Total sales in Alabama from all sources amounts to about 4% of Johnson's total circulation.

In New York Times Company v. Sullivan, supra, we found that the contacts which the New York Times Corporation had with the State of Alabama were sufficient to subject it to in personam juris-

diction of the Alabama courts. However, it must be conceded that there were far more "minimum contacts" by the New York Times with Alabama than we have here. For example, New York Times employees came into the State of Alabama from time to time and solicited advertisements in Birmingham, Montgomery, Selma, and Mobile. It had "staff correspondents" who were on the payroll and one of whom was assigned to cover Alabama and in fact physically covered a great many stories in Alabama. Between the years 1956 through part of 1960 employees of the Times spent 153 days in Alabama. The Times made an active effort to keep resident "stringers" in Montgomery; as a matter of policy the Times preferred to have at least three "stringers" in Alabama at all times. During the period from 1956 to 1960 the Times carried 59 stories submitted by stringers from Alabama.

■ We believe that fewer contacts than existed in *Sullivan* would have permitted this state to constitutionally subject the New York Times to the court's jurisdiction in that case. However, we are not prepared to say that reducing all of the New York Times contacts to the amount involved here constitutes the "certain minimum contacts" referred to in *International Shoe Company,* supra, and required by the 14th Amendment as interpreted to date by the Supreme Court of the United States. We are aware that the Fifth Circuit held in Elkhart Engineering Corp. v. Dornier Werke, 343 F.2d 861 (1965)—a case also involving the constitutional limitations of Tit. 7, § 199(1)—that:

> " * * * Alabama may, consistent with the due process clause of the Fourteenth Amendment, assert jurisdiction over a non-resident, nonqualifying corporation in suits on a claim of liability for tortious injury arising out of activity of the non-resident within the state, even though only a single transaction is involved, and regardless of whether the activity is considered dangerous".

We concur in that pronouncement. However, in the case at hand we fail to find the activity required on the part of the non-resident, non-qualifying corporation.

We have recently decided in State v. MacFadden-Bartell Corporation, 280 Ala. 386, 194 So.2d 543 (1967) that the activity of a non-resident publisher of magazines which were sold through a local distributor did not make the non-resident subject to the payment of use tax in Alabama. We find here, as we found there, that the required constitutional "nexus" is missing on the facts as shown. We are not prepared to say that in every case all of the activity found in *Sullivan* is required, and believe that less is required, but the prescribed amount does not exist here.

Writ denied.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.