Jerry W. SCHOEL, Trustee in Bankruptcy of Carpenter, Inc., Plaintiff-Appellant,

v.

SIKES CORPORATION, etc., Defendant-Appellee.

No. 75–1772.

United States Court of Appeals, Fifth Circuit.

June 17, 1976.

W. B. Hairston, Jr., Silberman, Silberman & Loeb, Wilbur G. Silberman, Birmingham, Ala., for plaintiff-appellant.

James C. Barton, Jerome K. Lanning, Gilbert E. Johnston, Jr., Birmingham, Ala., for defendant-appellee.

Before THORNBERRY and AINSWORTH, Circuit Judges, and HOFFMAN *, District Judge.

AINSWORTH, Circuit Judge:

Plaintiff Jerry W. Schoel, Trustee in Bankruptcy of Carpenter, Inc. [Carpenter], an Alabama corporation, appeals from the order of the District Court granting the motion of defendant Sikes Corporation [Sikes] to quash service and dismiss the complaint on grounds that the activities of Sikes, a Florida corporation, not qualified to do business within the State of Alabama, were insufficient to support service of process under the long-arm statute of Alabama.

The questions at issue are whether the Alabama long-arm statute authorizes the exercise of jurisdiction over the nonresident defendant, and if so, whether the exercise of that jurisdiction would violate the due process clause of the Fourteenth Amendment. We conclude that the statute is applicable and that there is no constitutional infirmity. We therefore reverse and remand.

The Alabama statute, in pertinent part, provides that:

> Any nonresident person, firm, partnership, general or limited, or any corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall do any business or perform any character of work or service in this state shall, by the doing of such business or the performing of such work, or services, be deemed to have appointed the secretary of state, or his successor or successors in office, to be the true and lawful attorney or agent of such nonresident, upon whom process may be served in any action accrued, accruing, or resulting from the doing of such business, or the performing of such work or service, or relating to or as an incident thereof, by any such nonresident, or his, its or their agent, servant or employee. And such service shall be valid whether or not the acts done in Alabama shall of and within themselves constitute a complete cause of action.

Title 7, § 199(1), Code of Alabama. Sikes is a manufacturer of floor covering which sells its products wholesale through distributors located in southeast United States, including Birmingham, Mobile, Montgomery and Muscle Shoals, Alabama. Until 1962, Carpenter operated a carpet and tile distributorship in Birmingham, Mobile and Montgomery, Alabama. In 1965, Carpenter started doing business with Sikes (then operating as Florida Tile Industries, Inc.) and thereafter regularly distributed Sikes' products in the State of Alabama until 1972.[1] During the year 1971 Carpenter suffered severe financial reverses. On March 16, 1972, as a condition of extending further credit to Carpenter, Sikes obtained from Carpenter a Security Agreement to secure the obligations owed Sikes by Carpenter, which then amounted to a sum in excess of

---

* District Judge of the Eastern District of Virginia, sitting by designation.

1. Sikes contends that the sale and shipment of goods from Florida to an independent distributor located in Alabama is not the doing of business or the performance of work or service in Alabama by the seller, citing *Ex Parte Emerson,* 270 Ala. 679, 121 So.2d 914 (1960). While there are many factors which distinguish *Emerson* from the present case [*e. g.,* the defendant on which substituted service of process was made was a small, one-man operation, with only three or four men selling its product within the entire United States, each in his own territory, and the sales were casual and occasional only], contrary to appellee's contention, the opinion explicitly states that none of the defendants had any distributor in Alabama. 121 So.2d at 917.

$490,000.[2] On December 6, 1972, Sikes foreclosed, took physical possession of the inventory of Carpenter, and so informed Carpenter's customers on December 8, inviting them to contact Sikes if they desired further information. On December 15, 1972, Sikes conducted a public sale pursuant to the terms of the Security Agreement, and as the sole bidder, purchased the inventory of Carpenter. On the same day Sikes formed a wholly owned Alabama subsidiary, Sikes Distributors of Alabama, Inc., to which Sikes conveyed the inventory. The new corporation thereafter took over the collection of accounts receivable of Carpenter covered by the Security Agreement, using the same bank account as Sikes,[3] and credited the amounts collected against the indebtedness due Sikes from Carpenter. On August 3, 1973, Carpenter was adjudicated a bankrupt by involuntary petition.

On October 1, 1974, plaintiff, as Trustee of the bankrupt Carpenter, filed a complaint against Sikes seeking damages for the unlawful taking and disposing of the assets of Carpenter, alleging that Sikes failed to comply with the laws of Alabama in the creation of its security interest, and in the takeover and liquidation of the Carpenter assets. Sikes was served with process through the Secretary of State of Alabama, pursuant to Title 7, § 199(1), Code of Alabama, *supra.*

In granting the motion of Sikes to quash service and dismiss, the District Court held that the contacts by Sikes with Alabama were "all related or associated with the acquisition and subsequent liquidation of a security interest by defendant," and as so limited were insufficient to support service of process.

We disagree with the District Court's conclusion. The validity of the mode and method of such acquisition and liquidation is the essence of the Trustee's cause of action as stated in his complaint. Necessarily, in order to utilize substituted service under the terms of Alabama's long-arm statute, the cause of action asserted must accrue or result from the activities of the nonresident in the state, and perforce those activities must be "related or associated" with the cause of action asserted.

Sikes' principal contention is that the only significant contact it had with Alabama was the acquisition and liquidation of the security interest and that no occurrence subsequent to the adjudication of bankruptcy on August 3, 1973 has any relevance to this action or Sikes' amenability to service of process therein. The facts of this case do not support Sikes' contention. By answers to interrogatories submitted by the Trustee, regarding the activities of Sikes in Alabama during the year 1972, Sikes admitted the following occurrences:

Various employees of Sikes were present in Alabama from time to time on its behalf. Sales representatives visited its distributors in Alabama; these representatives would occasionally accompany the independent distributors' employees when they were visiting prospective customers. Commissions were paid Sikes' employees based on interstate sales pursuant to orders from Alabama customers. Sikes paid a consultant to render assistance to Carpenter in merchandising and other managerial problems.

On January 1, 1973, Gilbert M. Carpenter, Sr., president and sole owner of Carpenter, Inc., was also employed by Sikes as a consultant. Sikes acquired all the shares of common stock of Sikes Distributors of Alabama, Inc. on the date of its incorporation on December 5, 1972 and the officers of both corporations are identical.

---

2. The agreement covered all inventory, accounts, contract rights, instruments, documents, chattel paper and all proceeds and products of and accessions to same.

3. Because of the numerous business contacts between Sikes and the State of Alabama, it is unnecessary for the purpose of this opinion to decide whether the activities of Sikes Distributors of Alabama, Inc. should be imputed to the parent corporation for jurisdictional purposes. Nevertheless, the intermingling of funds in the same bank account, with separate accounting, is noted. *Cf. Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925).

By deposition, Phillip B. Anderson, director, secretary and counsel for Sikes since its organization in 1954, testified to the following activities of Sikes:

The Security Agreement previously referred to was mailed from Florida to Birmingham, Alabama for Gilbert Carpenter's signature.[4] As a result of Gilbert Carpenter's substantial loss in 1971, Sikes attempted to help him by instructing him in customer treatment and branch operation. In 1972, Sikes volunteered "distributor assistance" payments to Carpenter, which payments are usually made in response to Sikes' request that a distributor "do some additional things to try to increase his ability to market [Sikes] products." Sikes worked diligently with problem distributors and Carpenter's account was the largest of all problem distributors in the country.

 The criteria to determine the "presence" of a corporation in the state for the purpose of substituted service is neither mechanical nor quantitative, *International Shoe Co. v. State of Washington, Etc.*, 326 U.S. 310, 318, 66 S.Ct. 154, 159, 90 L.Ed. 95, 103 (1945), and each case must be decided

on its own facts under the law of the forum state to determine the validity of such service to effect jurisdiction. *Tetco Metal Products, Inc. v. Langham,* 5 Cir., 1968, 387 F.2d 721; *Barrett v. Browning Arms Company,* 5 Cir., 1970, 433 F.2d 141; *King & Hatch, Inc. v. Southern Pipe & Supply Company,* 5 Cir., 1970, 435 F.2d 43. Due process requires that the nonresident corporation not present in the state have certain minimum contacts with the forum state such that traditional notions of fair play and substantial justice are not offended.[5]

 It has been consistently held that the scope of Alabama's substituted service under section 199(1) is as broad as the permissible limits of due process,[6] and under the provisions of that statute the cause of action need not rest on activities rising to the dignity of doing business but can be predicated on the mere performance of any work or service in the state.[7] From the undisputed evidence in this case, the activities of Sikes far exceeded the minimum contact requirement necessary to subject it to the jurisdiction of Alabama without offending due process.[8]

4. The parties disagree on the issue of where the contract was executed. By affidavit Phillip G. Dunne, Vice-President of Sikes, stated that the Security Agreement was executed by Sikes and delivered in Florida. We are impressed, however, by the Trustee's argument that Carpenter's tangibles were located in Alabama, and the jurisdiction for the judicial enforcement of Sikes' rights to those tangibles, had court action been necessary, would have been Alabama. *See Curry v. McCanless,* 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339 (1939).

5. *See McGee v. International Life Insurance Company,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), in which the Supreme Court held that it was sufficient for purposes of due process that the suit was based on a contract which had substantial connection with the forum state. *See ɛlso International Shoe Co. v. State of Washington, Etc.,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *New York Times Company v. Connor,* 5 Cir., 1966, 365 F.2d 567; *In Re Martin,* 281 Ala. 135, 199 So.2d 836 (1967); *King Homes Incorporated v. Roberts,* 46 Ala. App. 257, 240 So.2d 679 (1970).

6. *See New York Times Company v. Sullivan,* 273 Ala. 656, 144 So.2d 25, 34 (1962); *In Re Martin,* 281 Ala. 135, 199 So.2d 836, 837 (1967). *See also Sells v. International Harvester Co.,*

*Inc.,* 5 Cir., 1975, 513 F.2d 762; *King & Hatch, Inc. v. Southern Pipe & Supply Company,* 5 Cir., 1970, 435 F.2d 43; *Elkhart Engineering Corporation v. Dornier Werke,* 5 Cir., 1965, 343 F.2d 861.

7. *See Barrett v. Browning Arms Company,* 5 Cir., 1970, 433 F.2d 141, 143.

8. Sikes places great reliance on certain cases which narrowly restrict the concept of "doing business," e. g., *Holman v. Durham Buggy Co.,* 200 Ala. 556, 76 So. 914 (1917); *Roberts v. Yellow Manufacturing Acceptance Corporation,* 5 Cir., 1963, 315 F.2d 161; *Friedlander Bros. v. Deal,* 218 Ala. 245, 118 So. 508 (1928). These cases were decided, however, in the context of qualification by a foreign corporation to do business in Alabama by precompliance with inhibitory laws of that state [Alabama Code, 1940, Title 51, §§ 339, 340, 342; Alabama Code, 1923, §§ 7209, 7220; Alabama Constitution § 232] relating to the payment of franchise and admission taxes and the filing with the Secretary of State articles of incorporation and related instruments. These precondition requirements for qualifying should not be equated with the jurisdictional purposes of Alabama's long-arm statute. To hold otherwise would be to render the statute inoperative.

While we intimate no opinion as to the ultimate outcome of this controversy, we conclude that the District Court was in error in granting the motion to quash service and dismiss.

REVERSED AND REMANDED.