194 So.2d 543

**STATE of Alabama**

**v.**

**MacFADDEN–BARTELL CORPORATION.**

**3 Div. 208.**

Supreme Court of Alabama.

Jan. 26, 1967.

Richmond M. Flowers, Atty. Gen., Willard W. Livingston and Herbert I. Burson, Jr., Asst. Attys. Gen., for appellant.

Beddow, Embry & Beddow, Birmingham, for appellee.

PER CURIAM.

This is an appeal by the State Department of Revenue from a decree of the Circuit Court of Montgomery County, in Equity, adjudging a final use tax assessment made by the State against MacFadden-Bartell Corporation to be illegal and void.

The major issue on which our judgment turns is whether or not by the nature of its activity (if any) within the State of Alabama, the appellee MacFadden-Bartell Corporation has established such jurisdictional contacts so as to subject it to the provisions of Title 51, §§ 790, 791, and 792. In pertinent part these statutes are as follows:

"§ 790. * * * Every seller engaged in making retail sales of tangible personal property for storage, use or other consumption in this state, who: (a) Maintains a place of business, (b) qualifies to do business, (c) solicits and receives purchases or orders by agent or

salesman, or (d) distributes catalogs or other advertising matter and by reason thereof receives and accepts orders from residents, within the state of Alabama, * * *.

"§ 791. * * * Every such seller making sales of tangible personal property for storage, use or other consumption in this state, not exempted under the provisions of section 789 of this title, shall at the time of making such sales or, if the storage, use or other consumption of the tangible personal property is not then taxable hereunder, at the time such storage, use or other consumption becomes taxable hereunder, collect the tax imposed by this article from the purchaser, and give to the purchaser a receipt therefor in the manner and form prescribed by the department. * * *

"§ 792. * * * The tax imposed by this article shall be due and payable to the department quarterly on or before the twentieth day of the month next succeeding each quarterly period during which the storage, use or other consumption of tangible personal property became taxable hereunder, * * *. Every seller engaged in making retail sales of tangible personal property for storage, use or other consumption in this state, who: (a) Maintains a place of business, (b) qualified to do business, (c) solicits and receives purchases or orders by agent or salesman, or (d) distributes catalogs or other advertising matter and by reason thereof receives and accepts orders from residents, within the state of Alabama, shall, * * * file with the department a return for the preceding quarterly period * * *. The return shall be accompanied by a remittance of the amount of tax herein required to be collected by the seller * * *."

MacFadden-Bartell Corporation contends and the State concedes, that it does not "maintain a place of business" in Alabama, and that it has not "qualified to do business" in Alabama as required by §§ 790

(a) (b) and 792(a) (b). Appellee additionally contends that it does not solicit and receive purchases or orders by agent or salesmen as required by the foregoing sections. The State contests this contention and claims that appellee by virtue of its arrangement with EBSCO, an Alabama corporation, does in fact have an agent within the State of Alabama.

The facts, in essence, are as follows:

MacFadden-Bartell Corporation is engaged in the business of publishing various periodical magazines. It was incorporated in Delaware in 1959, with its principal place of business in New York City.

During the period covered by the assessment MacFadden-Bartell was not licensed or qualified to do business in the State of Alabama and had no designated agent for service of process in Alabama. It did not own, lease, operate or maintain any office or place of business in Alabama. It has never had any telephone listing or bank account in this state. No employee of Mac-Fadden-Bartell came into the State of Alabama for the purpose of soliciting, promoting or encouraging the sale of subscriptions, and there was no employee of Mac-Fadden-Bartell who resided in Alabama.

During the assessment period subscriptions were sold to residents of Alabama in two different ways. Approximately one-half were sold by EBSCO, an Alabama corporation. The other half was sold by what was termed "direct mail subscriptions". EBSCO is a corporation engaged in many business enterprises, one of which is the sale of magazine subscriptions. It sells subscriptions to publications of many different publishers. MacFadden-Bartell is one of the publishers whose magazines it sells and MacFadden-Bartell has no financial interest in EBSCO, exercises no control over it and furnishes no sales or promotional material to it in connection with its magazines.

The arrangement between EBSCO and MacFadden-Bartell appears to have been this: MacFadden-Bartell establishes a subscription price for each separate magazine which was the price it charged the subscriber on direct mail subscriptions. EBSCO made an arrangement with MacFadden-Bartell whereby it was agreed that EBSCO would pay to MacFadden-Bartell a certain percentage of the subscription price for each magazine subscription it sold and would retain the balance. The average and usual amount which EBSCO would remit to MacFadden-Bartell was 10% of the subscription price, meaning the price which MacFadden-Bartell would have gotten had it sold the subscription directly to the subscriber. That is to say that if EBSCO sold a $4.00 subscription it would send to MacFadden-Bartell forty cents and retain the rest. The amount varied from magazine to magazine. EBSCO prepared its own catalogs and sales material and in many instances the publications of MacFadden-Bartell were included in a "package" prepared by EBSCO which included magazines published by several different publishers. The arrangement between EBSCO and MacFadden-Bartell required only that EBSCO remit the agreed upon amount with respect to each subscription sold.

When EBSCO sent an order for a subscription to MacFadden-Bartell in New York it paid the previously agreed upon price at this time. MacFadden-Bartell then notified its printer to put the name of the new subscriber on the mailing list to receive the magazine as published. The printer then placed the magazine in the mail each month (or week, as the case may be).

As to the "direct mail" subscriptions involved, the orders for subscriptions and payment therefor were sent directly to the appellee in New York by the Alabama subscriber. These subscriptions were the result of circulars sent by mail by appellee over the United States, including Alabama, advertising a particular magazine. These magazines were delivered to the Alabama subscriber by U. S. mail.

EBSCO was registered with the Department of Revenue as a dealer and collected the Alabama sales tax on each subscription it sold and remitted to the State the sales tax collected.

From these facts the State contends that it is apparent that EBSCO is an agent of MacFadden-Bartell so as to bring MacFadden-Bartell within the purview of the foregoing sections, requiring it to collect the use tax both on the sales made by EBSCO and on those made directly. The evidence fails to sustain the State's contention.

It is admitted by the State that the decisions of this court and of the Supreme Court of the United States indicate that the State has no jurisdiction to tax a foreign seller who does no more than solicit orders from residents of the State by mailing advertising and catalog material into the State. Some minimal business nexus with the State is required before the State may make a use tax collector out of the foreign seller within the tests explicitly laid down by the Supreme Court of the United States. Nelson v. Sears, Roebuck & Co., 312 U.S. 359, 61 S.C. 586, 85 L.Ed. 888; Nelson v. Montgomery Ward & Co., 312 U.S. 373, 61 S.Ct. 593, 85 L.Ed. 897; Miller Bros. Co. v. State of Maryland, 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744; Scripto, Inc. v. Carson, 362 U.S. 207, 80 S. Ct. 619, 4 L.Ed.2d 660. The State contends, however, that the required minimal "business nexus" exists here by virtue of the activities of MacFadden-Bartell within the State, acting through EBSCO.

In State v. Lane Bryant, Inc., 277 Ala. 385, 171 So.2d 91, Judge Eugene Carter of the Montgomery Circuit wrote a well-reasoned opinion which was adopted verbatim by this court as its opinion. There it was firmly established that in the absence of any further activity within the State by a foreign seller, the mailing into Alabama from outside the State of catalogs addressed to residents of the State, and the subsequent receipt of orders from those residents, followed by mailing the merchandise so ordered to them in Alabama, did not bring the foreign corporation (seller) within the scope of subdivision (d) of the foregoing sections. There it was noted:

" 'The Court is of the opinion that there must be a distribution of catalogues in a manner sufficient to provide a business nexus with Alabama—by agent or salesman, or, at a very minimum, by an independent contractor within the State of Alabama; and that the above cited statutes do not contemplate that a foreign seller, in the circumstances of Lane Bryant, may be made a collector of Alabama use tax simply because it sends catalogues exclusively by mail to Alabama residents, and accepts and fills orders outside the State of Alabama exclusively by mail. Sections 790 and 792 are replete with reference to activities "in this State" and "within the State of Alabama", indicating clearly that the legislature intended to impose an obligation to collect use taxes *only on a seller who had established some distinct connection with the State of Alabama, sufficient to have submitted himself to the jurisdiction of the State of Alabama for tax purposes.' "* (Emphasis added.)

Has that required connection been established by MacFadden-Bartell under the facts of this case? Let us look at the relationship between EBSCO and MacFadden-Bartell. Under the facts in this case EBSCO agrees to pay to MacFadden-Bartell a certain amount on each subscription it sells. It makes this arrangement in advance of the sale. EBSCO keeps all over that amount. It agrees only to pay the publisher a certain percentage amount of the subscription price to the customer. Presumably therefore, EBSCO could sell a $4.00 subscription (the price to the public set by MacFadden-Bartell) for $6.00 and under its agreement with MacFadden-Bartell send to it only forty cents, keeping the balance as

profit. EBSCO is not being paid a commission on sales it makes. Rather, it is operating its own business and retaining a profit over and above the cost. to it of subscriptions sold. It is a situation clearly distinguishable from Scripto, Inc. v. Carson, 105 So.2d 775 (Fla.), 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660, relied on heavily by the State. In that case a Georgia seller was compelled to collect the Florida use tax because of its solicitation of sales within the state through "independent brokers" located in Florida. The Supreme Court of the United States found that Florida could constitutionally compel the collection of the tax because under the facts in that case there existed a sufficient nexus. In that case there were approximately 10 "salesmen" working for Scripto (but not exclusively for Scripto) within the State of Florida. They took orders for goods and sent these orders to Atlanta for acceptance by Scripto. If the order were accepted, payment was made by the Florida customer directly to Scripto (or a division thereof, the distinction not being material). The Florida "salesman" was paid an agreed commission by Scripto for soliciting and obtaining the orders. The Supreme Court of the United States held that Florida could constitutionally require the collection of its use tax by Scripto, laying down the following rule:

"There must be, as our Brother Jackson stated in Miller Bros. Co. v. State of Maryland, 1954, 347 U.S. 340, 344–345, 74 S.Ct. 535, 539, 98 L.Ed. 744, 748, 'some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.' We believe that such a nexus is present here. First, the tax is a nondiscriminatory exaction levied for the use and enjoyment of property which has been purchased by Florida residents and which has actually entered into and become a part of the mass of property in that State. * * * appellant has 10 wholesalers, jobbers, or 'salesmen' conducting continuous local solicitation in Florida

and forwarding the resulting orders from that State to Atlanta for shipment of the ordered goods. The only incidence of this sales transaction that is nonlocal is the acceptance of the order. True, the 'salesmen' are not regular employees of appellant devoting full time to its service, but we conclude that such a fine distinction is without constitutional significance. The formal shift in the contractual tagging of the salesman as 'independent' neither results in changing his local function of solicitation nor bears upon its effectiveness in securing a substantial flow of goods into Florida."

In the case at hand EBSCO is not being paid a commission on the sales it makes and is not soliciting orders for MacFadden-Bartell. Rather it is soliciting business for itself for a profit. It seems to us that what EBSCO is in effect doing insofar as its arrangement with MacFadden-Bartell is concerned, is negotiating a price by which it purchases magazines from the publisher. It then resells these magazines to its customers, retaining all income from the sale over and above its cost. Were it not for the very nature of magazine subscriptions the merchandise bought by EBSCO could be shipped to it in Alabama for later retail sale just as any other merchandise bought might be. It would appear that EBSCO is in effect buying the subscriptions at wholesale for later retail to the public, within the meaning of Title 51, § 787(d). Indeed, that is the way EBSCO has treated the matter. When it sells a subscription to a customer, it collects the Alabama sales tax and remits it to the State.

We conclude, therefore, that the trial court correctly determined that EBSCO was not the "agent" or "representative" or "independent contractor" for MacFadden-Bartell within the meaning of the Alabama statutes as construed in State v. Lane Bryant, Inc., supra, and that therefore there is the absence of the sufficient business nexus with the State of Alabama insofar as appellee is concerned for the State of Alabama to require it to collect a use tax either as

to sales made by EBSCO or those made directly with which EBSCO has no connection.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, MERRILL, and HARWOOD, JJ., concur.