Yelverton's Inc., appeals from the assessment of Jefferson County sales taxes[1] for sales during the period between January *Page 1218 
1, 1992, and June 30, 1994. In 1967, the Legislature enacted Act No. 405, 1967 Ala. Acts, effective October 1, 1967 ("Act 405" or the "Act"), which authorized the levy of county sales and use taxes by counties with populations of 500,000 or more. Pursuant to that authorization, and on the basis of information that Yelverton's was selling appliances to Jefferson County residents, Jefferson County audited Yelverton's and assessed $8,625.73 in unpaid county taxes and penalties. Yelverton's challenges the assessment, arguing that it does not have the required nexus with Jefferson County to be compelled to collect Jefferson County taxes. Jefferson County disagrees, arguing that Yelverton's does have the required nexus under its interpretation of nexus.
Jefferson County's interpretation of nexus differs from the interpretation given that term by the State Department of Revenue (the "Department"). Yelverton's argues that Jefferson County cannot develop its own interpretation of nexus and that, under Act 405, the county must use the same interpretation used by the Department. Jefferson County argues that Act 405 authorizes it to develop its own taxing regulations and that its interpretation of nexus, and not the Department's interpretation, applies in this situation.
 I. FACTS
Yelverton's is an appliance store located in Jasper, in Walker County. Yelverton's has no salespersons or business locations outside of Walker County. However, it does advertise in the yellow pages of the Greater Birmingham telephone directory. Primarily, Yelverton's customers are Walker County residents. Occasionally, people who live outside Walker County will contact Yelverton's by telephone or visit the store. Some of these out-of-county customers purchase appliances from Yelverton's. When an out-of-county customer takes delivery of an appliance at the store, Yelverton's charges state sales tax, Walker County sales tax, and Jasper municipal sales tax. However, some out-of-county customers request delivery of their appliance to their home or business. Yelverton's delivers appliances to these out-of-county customers either by United States mail, by common carrier, by its own delivery trucks, or by direct shipment from the manufacturer. If Yelverton's delivers an appliance to a customer in another county, it charges only state sales tax. Yelverton's does not charge Walker County or Jasper municipal sales taxes on these out-of-county deliveries because the sale is deemed closed at the place where title is transferred, which is the place of delivery, not at the store. See Ala. Code 1975, §40-23-1(a)(5). Yelverton's does not collect use taxes for those counties in which it delivers merchandise because it argues that it does not have the required nexus with those counties.
Jefferson County decided that Yelverton's does have the required nexus with the county and that Yelverton's is liable for the failure to collect sales taxes on sales that took place between January 1, 1992, and June 30, 1994. Jefferson County audited Yelverton's and prepared a preliminary assessment, showing that Yelverton's owed $8,059.63 in taxes and $566.10 in interest and penalties. The preliminary assessment was prepared by Mr. James Parr, the county director of audits, and was issued by Mr. Randy Godeke, the county revenue director. Yelverton's appeared at an administrative hearing to challenge the preliminary assessment. The hearing officer at that hearing was Mr. Godeke. He determined that the preliminary assessment was proper and issued the final sales tax assessment.
When first notified by Jefferson County about the alleged tax liability, Yelverton's requested a copy of the rule pursuant to which the county found that nexus existed. Jefferson County provided Yelverton's with a copy of Ala. Code 1975, §40-23-68, and informed Yelverton's that it substituted the word "county" for the word "state" within that statute. Yelverton's also requested *Page 1219 
a detailed explanation of the county's position, which it never received.
Yelverton's paid the tax under protest and appealed to the Jefferson Circuit Court. Both Yelverton's and Jefferson County moved for a summary judgment. The trial court entered a summary judgment for Jefferson County. Yelverton's appeals from that summary judgment, arguing that the county cannot give the word "nexus" a different meaning than the meaning given it by the Department, that Yelverton's does not have the required nexus with the county, and that the county violated Yelverton's right to due process when it allowed the same official who had signed the preliminary assessment to serve as the hearing officer in the challenge of the assessment. In addition, Yelverton's requests that if this court determines that it does have nexus with the county so as to require it to collect Jefferson County taxes, that the decision be made prospective only. Because our answer to Yelverton's first argument disposes of the appeal, we need not address the other arguments that Yelverton's raises.
This court granted oral argument and requested that the Department file an amicus brief, which it did. However, the Department did not request to be heard in oral argument. After considering the Department's brief and the briefs and oral arguments of Yelverton's, Jefferson County, and other amici curiae in support of Yelverton's,[2] we reverse the summary judgment for Jefferson County and remand the case for proceedings not inconsistent with this opinion.
 II. SALES AND USE TAXES
Ala. Code 1975, § 40-23-2, levies what is commonly called asales tax on "every person, firm, or corporation . . . engaged orcontinuing within this state, in the business of selling at retail any tangible personal property whatsoever," in "an amount equal to four percent of the gross proceeds of sales of the business." Ala. Code 1975, § 40-23-2(1) (emphasis added). The sales tax is levied on only those sellers "engaged or continuing . . . in the business of selling [goods] at retail" within the State of Alabama. See Ala. Code 1975, § 40-23-2(1). The seller is required to add the tax to the purchase price of the retail goods, collect the tax from the purchaser, and remit the tax to the Department. Ala. Code 1975, § 40-23-26. A "sale," as that term is used for purposes of the sales tax statutes, is not
 "completed until the time and place when and where title is transferred by the seller or seller's, agent to the purchaser or purchaser's agent, and for the purpose of determining transfer of title, a common carrier or the U.S. Postal Service shall be deemed to be the agent of the seller, regardless of any F.O.B. point and regardless of who selects the method of transportation, and regardless of by whom or the method by which freight, postage, or other transportation charge is paid."
Ala. Code 1975, § 40-23-1(a)(5). For the purposes of the imposition of the sales tax, then, a sale is deemed completed at the point of delivery, regardless of agreements to the contrary or the mode of delivery.
The use tax is a companion tax to the sales tax and is imposed pursuant to Ala. Code 1975, § 40-23-61. The tax "is . . . imposed on the storage, use or other consumption in this state of tangible personal property . . . purchased at retail. . . ." Ala. Code 1975, § 40-23-61(a). The taxable event in the imposition of use tax is not the sale of the good, but is the storage, use, or consumption of that good within *Page 1220 
the taxing jurisdiction. Typically, the purchaser is required to remit use tax. Ala. Code 1975, § 40-23-61(d). However, in some instances, an out-of-state retailer may be required to collect and remit use taxes to the State of Alabama. Ala. Code 1975, §§ 40-23-66 and 40-23-68.
 "In the enactment of sales and use tax statutes, it was the underlying purpose and intent of the legislature to impose a tax upon the `ultimate consumer' of the goods purchased, with the tax being based upon the amount of the gross receipts of retailer to consumer. The sales tax statutes apply to retail sales or purchases taking place within the state; the use tax statutes apply to goods purchased at retail outside of the state and brought into the state for use by the purchaser."
State v. Marmon Industries, Inc., 456 So.2d 798, 800-01
(Ala.Civ.App. 1984).
The definition of "sale" in Ala. Code 1975, § 40-23-1(a)(5), appears in the state sales tax statutes, which are found in Article I of Chapter 23 of Title 40. Ala. Code 1975, §40-23-1(a) provides: "For the purpose of this division the following terms shall have the respective meanings ascribed by this section." The use tax statutes, found in Article II of Chapter 23 of Title 40, have their own definition section, Ala. Code 1975, § 40-23-60. No definition for "sale" appears in the use tax statutes. The clear impact of the statutes in interstate transactions is that an out-of-state seller that meets one of the requirements of Ala. Code 1975, § 40-23-68, commonly referred to as the "seller's use tax" statute, must collect use tax on retail sales to Alabama purchasers. The tax cannot be a sales tax because the out-of-state seller is not "engaged or continuing in the business of selling [goods] at retail" within the State of Alabama. See Ala. Code 1975, § 40-23-2(1).
The tax in this case is not a sales tax because it is not imposed on a business engaged in selling goods in Jefferson County. Instead, it is a use tax because the tax is imposed on the storage, consumption, or use, within Jefferson County, of goods purchased from a business not engaged in selling goods in Jefferson County. In the interstate application, an out-of-state seller is required to collect use taxes only if the seller has sufficient nexus with the State of Alabama. See, e.g., State v.MacFadden-Bartell Corp., 280 Ala. 386, 194 So.2d 543 (1967);State v. Lane Bryant, Inc., 277 Ala. 385, 171 So.2d 91 (1965). Because the Department, according to its brief, applies the same rules to both interstate and intrastate transactions, an out-of-county seller would also need to have sufficient nexus with the taxing county to be required to collect that county's use tax.
To understand the arguments presented, we must understand what nexus is. Nexus is related to the minimum contacts test applied in personal jurisdiction caselaw. Essentially, a retailer must have "`established some distinct connection with the State of Alabama, sufficient to have submitted himself to the jurisdiction of the State of Alabama for tax purposes.'" MacFadden-Bartell Corp.,280 Ala. at 389, 194 So.2d at 547 (quoting Lane Bryant, Inc.,277 Ala. at 387, 171 So.2d at 93). In the interstate context, the United States Supreme Court has mapped out nexus requirements. The purpose of the nexus requirement in interstate commerce is to satisfy both the Due Process Clause and the Commerce Clause. See,e.g., Quill Corp. v. North Dakota, 504 U.S. 298, 112 S.Ct. 1904,119 L.Ed.2d 91 (1992). Although the Commerce Clause is not implicated in intrastate commerce, the due process portion of the analysis is applicable to transactions in intrastate commerce. Regardless of the fact that the transactions all take place within the State of Alabama, the question whether a retailer with no contacts with the taxing jurisdiction should be required to undertake a duty to collect the tax for the taxing jurisdiction remains important. As is always the case in a due *Page 1221 
process analysis, the focus is on fundamental fairness.
Originally, the United States Supreme Court required that a state have "some definite link, some minimum connection between [itself] and the person, property or transaction it seeks to tax" to satisfy the due process prong of nexus. Miller Brothers Co. v.Maryland, 347 U.S. 340, 345, 74 S.Ct. 535, 539, 98 L.Ed. 744, 749
(1954). In Miller Brothers, the Supreme Court determined that Maryland could not impose a duty to collect Maryland use tax on a Delaware seller that had not solicited business within the State of Maryland other than through the effects of general advertising. Miller Brothers, 347 U.S. at 347, 74 S.Ct. at 540,98 L.Ed. at 749. In Scripto, Inc. v. Carson, 362 U.S. 207,80 S.Ct. 619, 4 L.Ed.2d 660 (1960), the Supreme Court distinguishedMiller Brothers and held that an out-of-state seller could be required to collect Florida use tax on the basis that the company sold its products through salespersons who actually lived in Florida. Alabama caselaw interpreting the state tax statutes in light of Miller Brothers and Scripto concluded that "there must be a [connection] sufficient to provide a business nexus with Alabama — by agent or salesmen, or at a very minimum, by an independent contractor within the State of Alabama" to require an out-of-state seller to collect Alabama use tax. Lane Bryant,Inc., 277 Ala. at 387, 171 So.2d at 93.
Out of this interpretation arose the "physical presence" test used by the Department, as incorporated in its regulation on municipal taxation, Regulation 810-6-3-.51.[3] The Department applies that regulation to counties as well as to municipalities. The regulation states:
 "(2) Where a [county] levies a true sales and use tax . . . the sellers located in the [county] are required to collect the sales tax on retail sales of tangible personal property in the same manner as the state sales tax. . . . If the sale is made and as a part of the sales agreement the seller is required to deliver the item purchased outside the taxing jurisdiction of the [county], the sale is exempt from the tax. If the seller whose place of business is located outside of the [county] has salesmen soliciting orders within the [county], the seller is required to collect and remit the seller's use tax on retail sales of tangible personal property in the same manner as an out-of-state seller who has salesmen soliciting orders in Alabama. . . . It does not matter how delivery is made." (Emphasis added.)
State Department of Revenue Reg. 810-6-3-.51. Under the regulation, Yelverton's, as an out-of-county seller, would not have to collect Jefferson County use tax unless it had salespersons soliciting orders in Jefferson County.
The Department has the power to promulgate regulations necessary for the enforcement of the sales and use taxes. Ala. Code 1975, § 40-23-31. The Department's interpretation of the regulations and statutes it is charged with enforcing should be given great: weight and deference by this court unless that interpretation is contrary to the plain wording of the statute or regulation. Farmer v. Hypo Holdings, Inc., 675 So.2d 387, 390. (Ala. 1996). In light of our review of the sales and use tax statutes and of the Department's regulations, we cannot say that the *Page 1222 
Department's interpretation of those statutes and regulations is contrary to their plain wording. Therefore, we agree with the Department that Yelverton's is not required to collect Jefferson County use tax in this situation under the state use tax statutes and the Department's regulations.
 III. MUST JEFFERSON COUNTY USE THE STATE INTERPRETATION OF NEXUS IN DECIDING THE TAX LIABILITY OF OUT-OF-COUNTY RETAILERS WHO DELIVER GOODS IN JEFFERSON COUNTY?
Yelverton's does not have the required nexus with Jefferson County under the Department's regulations and the state sales and use tax statutes. Therefore, it would not be required by the Department to collect Jefferson County use tax on sales to Jefferson County residents. However, Jefferson County asserts that Yelverton's must collect Jefferson County sales tax on any sales closed within the county because the county is self-administered, and, therefore, the county can interpret nexus its own way, regardless of the state's interpretation.
Jefferson County correctly argues that Act 405 authorizes it to develop its own tax regulations. Section 9 of that Act gives the commissioner of licenses (known in Jefferson County as the revenue director) the right to "fix regulations not in conflict with the provisions of this act." However, the Act also provides that the taxes to be imposed by the counties are to "generallyparallel the provisions of the State sales and use tax." Act 405, § 2 (emphasis added).
In statutory construction, this court must "ascertain and effectuate legislative intent as expressed in the statute."Alabama Farm Bureau Mutual Casualty Insurance Co. v. City ofHartselle, 460 So.2d 1219, 1223 (Ala. 1984). "To ascertain that intent, we must first focus our attention on the language of the [statute], and we must give effect to the intent clearly expressed therein if the language is unambiguous." City ofMillbrook v. Tri-Community Water System, 692 So.2d 866, 867
(Ala.Civ.App. 1997) (citing Hartselle, 460 So.2d at 1223). "Words used in the statute must be given their natural, plain, ordinary, and commonly understood meaning." Hartselle, 460 So.2d at 1223. Because the statute in question is a taxing statute, it must be "strictly construed against the taxing power"; and "[w]here the language of a taxing statute is reasonably capable of two constructions, the interpretation most favorable to the taxpayer must be adopted." Id.
Although the Act clearly allows Jefferson County to develop its own regulations, the Act also requires that those regulations not conflict with the provisions of the Act. In light of the fact that the legislative intent section of the Act clearly states that the taxes created under the Act are to "generally parallel" their state counterparts, we must decide what the term "generally parallel" means as it is used in the Act and whether Jefferson County can interpret the concept of nexus differently than does the Department.
According to the Oxford English Dictionary (1961), the word "parallel," as a verb, means "[t]o be parallel or equal to; to correspond or be equivalent to; to come up to, equal, match." In addition, "parallel," as a noun, is defined, among other things, as "[a] thing or person agreeing with another in essential particulars; something precisely analogous, comparable, or of equal worth or force; a counterpart, equal, match." OxfordEnglish Dictionary (1961). The legislative intent of Act 405, in light of the meaning of "parallel," is that the taxes imposed by the county under the Act be equal or similar in all "essential particulars" to the state sales and use taxes.
Other sections of the Act also indicate that the Legislature intended that the sales and use taxes imposed by the county parallel the state's tax scheme. For example, *Page 1223 
the preamble to the Act states that the sales tax created by the Act should "generally parallel the state sales tax, [and be levied] upon persons engaged in said county in the business of selling tangible personal property at retail." In addition, Section 3(b) of Act 405 indicates that the sales tax applies to those sellers doing business in the county. Both of these provisions illustrate that the Act requires that a seller engaged in business in the county collect county sales tax, much like the state statute requires that a seller engaged in business in the State of Alabama collect state sales tax. Similarly, Section 4(a) of the Act imposes a use tax on those consumers who "stor[e], use or other[wise] consum[e] in the county" items purchased at retail, "regardless of whether the retailer who made the sale is or is not engaged in business in the county." This section underscores the difference between a sales tax, which is imposed on a seller doing business in the county when it makes a sale in the county, and a use tax, which is imposed not on the sale of a good, but instead on the use, storage, or consumption of a good within the county.
In addition, besides the fact that the Act requires that the county taxes parallel the state taxes, the Act indicates that "the procedures specified in [the sales and use tax] statutes are incorporated herein by reference." Act 405, § 2. Section 4(d) of the Act states:
 "[A]ll provisions and procedures with respect to the . . . determination of the amount of tax due . . . provided for in the State use tax statutes with respect to the State use tax shall be applicable to the tax levied [under this Act]. . . . Any procedure or provision involving the State Department of Revenue which is incorporated herein by reference to the State use tax statutes shall be deemed to apply. . . ."
(Emphasis added.)[4] Under the Act, then, the county taxes should parallel the state sales and use tax, and the procedures used by the county for determining taxes due and the like should mirror the procedures used by the Department.
Finally, we note that the Legislature has given the Department "general and complete supervision and control" over state sales and use taxation and over "taxes for . . . counties." Ala. Code 1975, § 40-2-11(1). The Department is also charged with the duty "[t]o confer with, advise, and direct the several county [tax officials]." Ala. Code 1975, § 40-2-11(3). When we consider both the authority granted the Department by the Legislature and the clear legislative intent that the county sales and use taxes parallel the state sales and use taxes, we must conclude that Jefferson County cannot interpret, the state sales and use tax statutes differently from the Department.
 IV. CONCLUSION
In light of our decision that Jefferson County cannot interpret the concept of nexus differently from the way the Department interprets that concept, we pretermit discussion of all other issues raised by Yelverton's. On remand, the trial court is to enter a final judgment ordering that all moneys paid by Yelverton's as taxes, interest, and penalties, be refunded.
We realize that the sales transactions at issue in this case escape county taxation. However, that is the result obtained under the state sales and use tax statutes and the Department's regulations. In summary, a seller (Yelverton's) would be required to collect its local county (Walker) sales tax unless itdelivered the purchased item into another taxing jurisdiction (Jefferson County). On an item delivered into another taxing jurisdiction, the seller would be required to collect the other taxing jurisdiction's use tax only if the seller has *Page 1224 
nexus with the other taxing jurisdiction. If the seller does not have nexus, it could not be required to collect the other taxing jurisdiction's use tax on an item delivered into that taxing jurisdiction; the seller could not collect the local county sales
tax on that item either, because the sale of that item was not closed within the local county.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur.
[1] Although Jefferson County assessed sales taxes, the taxes in this case, if due would be use taxes. See our discussion of sales and use taxes, infra.
[2] The following groups joined as amici curiae in support of Yelverton's position: the Alabama Retail Association, the Business Council of Alabama, the Alabama Branch of the Associated General Contractors of America, the Alabama Chapter of the National Federation of Independent Business, the Automobile Dealers Association of Alabama, Inc., the Alabama Oilmen's Association, the Alabama Press Association, and the Alabama Society of Certified Public Accountants.
[3] Most recently, the United States Supreme Court has indicated that physical presence is not required to guarantee due process in a taxing situation. Quill Corp. v. North Dakota,504 U.S. 298, 308, 112 S.Ct. 1904, 1911, 119 L.Ed.2d 91, 104 (1992). The inquiry is whether the retailer's contacts with the state gives the retailer "fair warning that [its] activity may subject [it] to the jurisdiction of a foreign sovereign.'" Quill,504 U.S. at 308, 112 S.Ct. at 1911, 119 L.Ed.2d at 104 (quotingShaffer v. Heitner, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587,53 L.Ed.2d 683, 706 (1977)(Stevens, J., concurring)). However, the question whether the Department's regulations should be amended to reflect the changes in due process analysis enunciated in Quill is not before us.
[4] Section 3(h) of Act 405, which addresses the county's power to assess sales taxes, also contains the same emphasized language, with the substitution of the word "sales" for the word use.