Boyd Brothers Transportation, Inc., appeals from a summary judgment entered by the Barbour Circuit Court in favor of the State Department of Revenue ("the Department") in a proceeding for judicial review of an administrative decision upholding *Page 473 
a use-tax assessment against Boyd Brothers in the amount of $916,166.95. We reverse.
 Factual Background
The facts of this case are undisputed. Boyd Brothers, a Delaware corporation with its corporate headquarters located in Clayton, Alabama, is an interstate motor freight carrier with two terminals in Alabama and three terminals outside Alabama — in Georgia, Mississippi, and Ohio. Between October 1997 and March 2003, Boyd Brothers purchased 740 truck tractors (hereinafter referred to as "trucks") and 500 truck trailers (hereinafter referred to as "trailers") from manufacturers that delivered them to Boyd Brothers' Ohio terminal. The purchases were not subject to Ohio sales or use taxes; Boyd Brothers paid no sales tax to Ohio and no subsequent use tax to any other state.
The first use of the trucks and trailers occurred in Ohio. There, Boyd Brothers serviced the vehicles, applied the appropriate decals and auxiliary equipment, lawfully titled and tagged them, registered them pursuant to the International Registration Plan ("IRP"), [1] and put them into interstate service, delivering freight wherever its customers desired within the 48 contiguous states.
After the vehicles had been in use an average of 400 days, Boyd Brothers assigned 507 trucks (approximately 70% of those purchased during the pertinent tax years) to drivers based in Alabama or used them to haul intrastate loads in Alabama. The trailers were not assigned to particular drivers or to particular trucks during the pertinent tax years. After being assigned to Alabama-based drivers, the trucks remained in the interstate commonand contract-freight carrier business, carrying freight nationwide. Twenty-one percent of the trucks occasionally hauled an intrastate load in Alabama. The Boyd Brothers fleet operated 8% of its miles in Alabama and 92% of its miles outside Alabama during the pertinent tax years.
The Department concluded that the taxable events for purposes of the Alabama use tax were the assignment of a truck to an Alabama-based driver or the use of a truck to haul an intrastate load in Alabama. On 507 trucks that were either assigned to an Alabama-based driver or used to haul an intrastate load, the Department assessed a use tax of two percent of the lesser of the depreciated value of the trucks or the net trade value of the trucks. The Department computed the depreciated value of the trucks by reducing the purchase price by a daily depreciation amount for each of the 400 days that the trucks were used in interstate commerce before they were assigned to an Alabama driver or hauled an intrastate load in Alabama.
 Procedural History
In February 2004, the Department entered a final assessment of use tax in the amount of $916,166.95 on 507 trucks and 70% of the trailers[2] that Boyd Brothers *Page 474 
had purchased between October 1997 and March 2003. Boyd Brothers paid the tax under protest and timely appealed the final assessment to the Department's Administrative Law Division. After a hearing, an administrative law judge ("ALJ") upheld the assessment. Boyd Brothers then appealed to the circuit court. The parties filed cross-motions for a summary judgment and submitted evidence and briefs in support of their motions. The circuit court heard argument on the motions and reviewed the administrative record.
On April 26, 2006, the circuit court denied Boyd Brothers' motion and granted the Department's motion, holding that Boyd Brothers had "failed to submit sufficient evidence to rebut the presumption of correctness accorded the final order of the [ALJ]." Boyd Brothers timely appealed to this court.
 Standard of Review
The circuit court's judgment in this case is accorded no presumption of correctness.
 "`"In reviewing the disposition of a motion for summary judgment, `[an appellate court] utilize[s] the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542
(Ala. 1995); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989)). Our review is further subject to the caveat that [an appellate court] must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala. 1993); Banners v. Balfour Guthrie, Inc., 564 So.2d 412, 413
(Ala. 1990)."
 "`Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997). It has also been observed that "where the facts are not in dispute and we are presented with pure questions of law, [the] standard of review is de novo." State v. American Tobacco Co., 772 So.2d 417, 419 (Ala. 2000) (citing Ex parte Graham, 702 So.2d 1215 (Ala. 1997), and Beavers v. County of Walker, 645 So.2d 1365
(Ala. 1994)).'"
State Department of Revenue v. Union Tank Car Co.,974 So.2d 1024, 1026-27 (Ala.Civ.App. 2007) (quoting Carlisle v.Golden Rod Feed Mill, 883 So.2d 710, 711-12
(Ala.Civ.App. 2003)).
 Discussion
In Ex parte Fleming Foods of Alabama, Inc.,648 So.2d 577, 579 (Ala. 1994), the Alabama Supreme Court explained the nature of the use tax:
 "[A] use tax is not a tax on revenues generated from carrying on interstate business, . . . but is an excise tax imposed upon the privilege of storing, using, or otherwise consuming tangible *Page 475 
personal property purchased at retail outside the state and domiciled in the state. The use tax is not a recurring annual tax, but is a one-time tax levied at the same rate as the sales tax and is complementary to the sales tax."
The sales tax is levied only upon those sellers "engaged or continuing . . . in the business of selling [goods] at retail" within the State of Alabama. § 40-23-2(1), Ala. Code 1975. The seller must add the tax to the purchase price of the retail goods, collect the tax from the purchaser, and remit the tax to the Department. § 40-23-26, Ala. Code 1975. The use tax is complementary to the sales tax and is imposed pursuant to § 40-23-61, Ala. Code 1975.
The use tax "is . . . imposed on the storage, use or other consumption in this state of tangible personal property . . . purchased at retail. . . ." § 40-23-61(a), Ala. Code 1975. "Typically, the purchaser is required to remit use tax. Ala. Code 1975, § 40-23-61(d)." Yelverton's, Inc. v.Jefferson County, 742 So.2d 1216, 1220 (Ala.Civ.App. 1997).
 "The sales tax statutes apply to retail sales or purchases taking place within the state; the use tax statutes apply to goods purchased at retail outside of the state and brought into the state for use by the purchaser."
State v. Mormon Indus., Inc., 456 So.2d 798, 800-01
(Ala.Civ.App. 1984). "The use tax serves to equalize the burden of the sales tax and to prevent a person from avoiding the sales tax by purchasing goods outside the state." Ex parte FlemingFoods of Alabama, Inc., 648 So.2d at 578.
 "Through this scheme, Alabama ensures a level playing field for its merchants by preventing Alabama residents from leaving the state to acquire tax-free products elsewhere. See State v. Advertiser Co., 257 Ala. 423, [426,] 59 So.2d 576, 577
(1952). In addition, non-resident consumers are encouraged to enter the state to make a purchase because they can avoid paying sales tax in Alabama by removing their property to their state of residence."
Culverhouse, Inc. v. Alabama Dep't of Revenue,358 B.R. 806, 811-12 (M.D.Ala. 2006), affirmed, 214 Fed.Appx. 921
(11th Cir. 2007) (not selected for publication in F.3d).
The use-tax statutes relevant to this case are subsections (c) and (e) of § 40-23-61, Ala. Code 1975. Those subsections provide, in pertinent part:
 "(c) An excise tax is hereby imposed on the storage, use or other consumption in this state of any automotive vehicle or truck trailer, semitrailer or house trailer, . . . purchased at retail on or after October 1, 1965, for storage, use or other consumption in this state at the rate of two percent of the sales price of such automotive vehicle, truck trailer, semitrailer or house trailer, . . . or the amount of tax collected by the seller, whichever is greater. . . ."
 "(e) An excise tax is hereby imposed on the classes of tangible personal property, and at the rates imposed on such classes, specified in subsections (a), (b) and (c) of this section, on the storage, use, or other consumption in the performance of a contract in this state of any such tangible personal property, new or used, the tax to be measured by the sales price or the fair and reasonable market value of such tangible personal property when put into use in this state, whichever is less; provided, that the tax imposed by this subsection shall not apply where the taxes imposed by subsection (a), (b), or (c) of this section apply." *Page 476 
The Department's auditors determined that Boyd Brothers owed Alabama use tax on the trucks and trailers it purchased at retail in Ohio pursuant to subsection (e). The ALJ determined that Boyd Brothers owed Alabama use tax pursuant to subsection (c) and did not reach the applicability of subsection (e). The circuit court, in determining that use tax was due, cited neither subsection (c) nor subsection (e). On appeal, Boyd Brothers argues that no use tax was due under either subsection (c) or subsection (e). We must, therefore, decide whether the use tax could be properly imposed pursuant to either subsection (c) or subsection (e) of § 40-23-61.
Boyd Brothers makes three arguments on appeal: (1) that the circuit court erred in upholding the imposition of the use tax on a transaction that occurred outside Alabama, when, Boyd Brothers says, if the transaction had occurred in Alabama it would not have been subject to the sales tax; (2) that a use tax cannot be imposed upon a purchase of property that was not, according to Boyd Brothers, intended "for storage, use or other consumption in [Alabama]" pursuant to subsection (c) of § 40-23-61; and (3) that the tax imposed by subsection (e) of § 40-23-61, which applies to interstate commerce, cannot be lawfully imposed upon a transaction that bears no relationship to the taxpayer's presence in Alabama and is higher than the tax on a similar transaction occurring within Alabama.
The Alabama use tax is not imposed under two circumstances. First, if the Alabama sales tax is imposed on a transaction, then the property on which the sales tax is paid is exempt from the imposition of the use tax. § 40-23-62(1), Ala. Code 1975. Second, if a sales or use tax equal to or greater than the amount of the Alabama tax is imposed on a transaction by another state, then the property that is the subject of the tax is not subject to the Alabama use tax. § 40-23-65, Ala. Code 1975.
 I.
Citing State v. Bay Towing Dredging Co.,265 Ala. 282, 90 So.2d 743 (1956), Boyd Brothers argues that a third circumstance preventing the imposition of the use tax exists by negative implication, namely: that if no sales tax is due on a transaction that occurs in Alabama, then no use tax is due on a similar transaction that occurs outside Alabama. BayTowing does, indeed, stand for that proposition. In that case, the supreme court accepted the taxpayer's argument that "unless property would be subject to the sales tax, had the sale occurred within this state, then the use tax cannot apply when the sale occurs without the state; that the property here involved would not be subject to the sales tax had the sale taken place here, and hence is not subject to the use tax."265 Ala. at 286, 90 So.2d at 746. See also State v. ThiokolChem. Corp., 46 Ala.App. 558, 559, 246 So.2d 447, 448
(Civ. 1970), affirmed, 286 Ala. 739, 246 So.2d 454 (1971) (holding that "[s]ince the sales tax and use tax statutes are complementary and are construed in pari materia, the exemption from sales tax would be equally an exemption from use tax"); andState v. Hanna Steel Corp., 276 Ala. 50, 158 So.2d 906
(1963) (holding that, because a machine acquired by the taxpayer in an out-of-state purchase before the effective date of the sales-tax and use-tax statutes, but brought into the state after the effective date of those statutes, would not have been subject to the sales tax on the date of purchase, it was also not subject to the use tax on the date it was brought into the state).
In Bay Towing, the taxpayer made "casual" and "isolated" purchases of used barges from Louisiana and Texas companies that were in the business of hauling oil by barge, but were not regular dealers *Page 477 
in barges. 265 Ala. at 285, 90 So.2d at 745. The applicable use-tax statute levied a tax on "`the storage, use or other consumption in this state of tangible personal property purchased at retail . . . regardless of whether the retaileris or is not engaged in the business [of dealing in that particular property].'" Id. (emphasis added). The applicable sales-tax statute, however, levied a tax upon "`every person, firm or corporation engaged, or continuing within this state in business of selling at retail any tangible personal property whatsoever . . .'" Id.
Holding that the sales-tax and use-tax provisions must be construed in pari materia, the supreme court stated:
 "While the sales tax is levied on the transaction of sale itself and the use tax on the use of property after the sale is completed, it seems clear that the legislature intended that these two tax laws be considered together as embodying one integrated, cohesive system of taxation. We have held them to be complementary, one to the other, and that the two acts should be construed in pari materia."
Bay Towing, 265 Ala. at 286, 90 So.2d at 746. The court concluded:
 "As we see it, if the use tax act is construed as imposing a tax on the use in this state of tangible personal property purchased outside the state in casual and isolated sales transactions, such tax would constitute an unlawful discrimination against interstate commerce, contrary to the Commerce Clause of the United States Constitution, Const. art. 1, § 8, cl. 3, since no similar or equivalent tax burden is imposed in connection with the purchase of such property in casual and isolated sales transactions within the state."
Id.
Accordingly, Boyd Brothers claims that it owes no use tax on the trucks and trailers it purchased in Ohio and later brought into Alabama because, it says, if the same transaction had occurred in Alabama, it would have incurred no sales tax. In support of that argument, Boyd Brothers relies on § 40-23-2(4), Ala. Code 1975, a provision known as the "drive-out" exemption from the sales tax, and the decision inCulverhouse, Inc. v. Alabama Department of Revenue, supra.
Section 40-23-2(4) provides, in pertinent part:
 "Sales of . . . trucks, truck trailers, or semitrailers that will be registered or titled outside Alabama, that are exported or removed from Alabama within 72 hours by the purchaser or his or her agent for first use outside Alabama are not subject to the Alabama sales tax."
(Emphasis added.) The "drive-out" exemption means that a buyer incurs no sales tax on a vehicle that he or she purchases in Alabama if, within 72 hours of the purchase, the buyer removes the vehicle for "first use" outside Alabama.
In Culverhouse, the taxpayer, Culverhouse, Inc., an Alabama corporation based in Ariton, purchased trucks and trailers from an Alabama dealer. The trucks and trailers were driven out of Alabama within 72 hours of their purchase and were registered in Oklahoma, where there was no applicable sales or use tax. Culverhouse then leased the trucks and trailers to a freight carrier whose principal place of business was in Georgia. Under the terms of the lease, Culverhouse retained control over the vehicles by directing their transportation activity and by assuming the operating costs associated with their passage.
 "Although the [Georgia freight carrier] performed [its] transportation services throughout the United States, the state *Page 478 
of Alabama played a significant part in [the] operations. In addition to the control exerted over the vehicles by Culverhouse's Ariton office, many of Culverhouse's drivers were from Alabama, and approximately thirty percent of the trucks' mileage was traveled within [Alabama]."
358 B.R. at 809. In an apparent attempt to circumvent the drive-out exemption from the sales tax, the Department assessed a use tax on the trucks and trailers. When Culverhouse later filed a petition in bankruptcy, the Department filed a claim for the use tax and Culverhouse objected.
 "In its resolution of these issues, the Bankruptcy Court found that the lease executed by Culverhouse triggered use tax liability even though the vehicles were located in Georgia at the time of the lease. In the alternative, the Bankruptcy Court concluded that Culverhouse asserted sufficient control over the trucks and trailers during their subsequent journeys into Alabama to justify [the Department's] exaction of use taxes."
358 B.R. at 809-10.
The federal district court for the Middle District of Alabama reversed the bankruptcy court's decision. The court began its analysis by examining the language of the use-tax statute itself, noting that subsection (c) of § 40-23-61 contains four separate elements, namely: "(1) the `storage, use or other consumption' (2) `in this state' (3) of property `purchased at retail' (4) `for storage, use or other consumption in this state.'" 358 B.R. at 810. The court held that an Alabama company's exertion of control over property located in another state does not come within the requirement of the fourth element — that the "use" of the property be "in this state." The court noted that "use" is defined broadly in § 40-23-60(8), Ala. Code 1975, to include
 "`[t]he exercise of any right or power over tangible personal property incident to the ownership of that property, or by any transaction where possession is given, except that it shall not include the sale of that property in the regular course of business.'"
 358 B.R. at 810. The court determined, however, that "the expansive scope of the statute's definition of use was meant to cast a wide net over the potential actions taken with regard to taxable property, not to change the breadth of the statute's geographic coverage."
Id. at 811. Following that rationale, the court construed the phrase "in this state" to mandate the "physical presence of the property within the state of Alabama at the time of relevant utilization." 358 B.R. at 813. The court viewed the "time of relevant utilization" as "the first usage of theproperty." 358 B.R. at 811 (emphasis added).
In this case, the circuit court erred in determining that Boyd Brothers had "failed to present sufficient evidence to rebut the presumption of correctness accorded the final order of the [ALJ]." Boyd Brothers established that the ALJ's final order was erroneous as a matter of law. The imposition of a use tax pursuant to subsection (c) was not only at odds with Alabama's integrated system of sales and use taxation, but it also placed a discriminatory burden on Boyd Brothers' interstate activity, a burden not shared by tax-payers like Culverhouse, Inc., that comply with the "drive-out" exemption of § 40-23-2(4).
Based on Culverhouse and the authorities cited therein, we cannot escape the conclusion that Alabama may not impose a use-tax burden on a transaction occurring outside Alabama when it fails to *Page 479 
impose a complementary sales-tax burden on a legally identical transaction occurring inside Alabama.
 II.
Next, Boyd Brothers argues that there was no evidence to support a finding that, when it purchased the trucks and trailers, it intended to use them in Alabama. We agree.
In Culverhouse, the federal district court for the Middle District of Alabama held that subsection (c) of § 40-23-61 "contains an intent element, which requires property to be purchased `for storage, use or other consumption in this state.'" 358 B.R. at 813.
 "This provision, as further defined by the Alabama Administrative Code, exempts from taxation all property put to a real and substantial use outside the state before entering Alabama. Accordingly, the Bankruptcy Court erred in applying the tax to Culverhouse's use of the vehicles when they were not located within the state of Alabama and by failing to consider whether Culverhouse employed the vehicles in a real and substantial use outside the state before directing their return to Alabama."
358 B.R. at 813-14. The provision of the Alabama Administrative Code to which the Culverhouse court referred is Rule 810-6-5-.25U), Ala. Admin. Code (Dep't of Revenue). That rule provides a "safe haven" from the use tax for property purchased outside Alabama "for use outside of Alabama," in much the same way that the "drive-out" exemption of § 40-23-2(4) provides a safe haven from the sales tax for property purchased inside Alabama. Rule 810-6-5-.25(1), which is entitled "Used Property Brought Into Alabama For Use By Owner," provides, in pertinent part:
 "(1) Where the owner of tangible personal property has purchased such property for use outside of Alabama and has, in fact, used it outside of Alabama, no use tax will be due by the owner because of later storage, use or consumption of it in Alabama. The proof of a real and substantial use of the property in another state shall rest upon the purchaser."
The Culverhouse court stated that Rule 810-6-5-.25U) "limits the use tax's applicability to those situations in which property is intended for use in Alabama by examining itsinitial real and substantial employment."358 B.R. at 813 (emphasis added). The undisputed evidence indicated that Boyd Brothers took the following actions in Ohio immediately after delivery of the property in Ohio: it serviced the vehicles, applied the appropriate decals and auxiliary equipment, lawfully titled and tagged them, registered them pursuant to the IRP, loaded them, and put them into interstate freight-carrier service. The vehicles were put to a "real and substantial" use in interstate commerce outside Alabama for 400 days. The fact that the vehicles were used in Alabama 13 monthsafter their purchase is immaterial for purposes of subsection (c) of § 40-23-61. The third and fourthelements of the subsection (c) test must coexist in order foruse-tax liability to attach. That is, when the property is "purchased at retail," the taxpayer must have the intent to "stor[e], use or otherwise consum[e]" the property "in this state." Here there was no evidence indicating that, at the time of the purchase, Boyd Brothers intended to use the trucks and trailers in Alabama. Pursuant to the express language of Rule 810-6-5-.25U), Boyd Brothers' "later use" of the trucks and trailers in Alabama did not subject it to use-tax liability.
Citing Ex parte Fleming Foods of Alabama, Inc., supra, the Department argues that "the Alabama Supreme Court has definitively decided the very issue that is *Page 480 
currently pending" before this court. Fleming Foods, however, is distinguishable on three key points. There, the taxpayer purchased trucks outside the state, but transported them to Alabama without using them in commerce elsewhere. The taxpayer paid no sales tax on the purchase and the use-tax assessment predated the existence of the "drive-out" exemption to sales-tax liability found in § 40-23-2(4). The taxpayer did not argue the applicability of Rule 810-6-5-.25(1).
Because the facts of this case fall squarely within the ambit of Rule 810-6-5-.25(1), it is not surprising that the Department's auditors did not rely on subsection (c) as a basis for imposing the use tax and that the Department conceded to the circuit court that it presented "no evidence . . . as to whether or not the trucks were originally purchased for use, storage or consumption in Alabama." Instead, the Department argued that Boyd Brothers' intent to use the property in Alabama "[could] be assumed, as the taxpayer is headquartered in Alabama, assigns trucks to Alabama, resident drivers, and hauls intrastate loads in Alabama." That assumption — that a trucking company head-quartered in Alabama that buys and first uses property outside Alabama will eventually use some of the property in Alabama, thereby indicating that the company's intent atthe time of purchase was to use the property in Alabama — although not unwarranted as a matter of logic, was insufficient to warrant the entry of a summary judgment in this case because Rule 810-6-5-.25(1) expressly provides that "later storage, use or consumption of [the property] in Alabama" will not, in and of itself, subject the owner to use-tax liability if the owner presents "proof of a real and substantial use of the property in another state." Boyd Brothers presented such proof. Therefore, to the extent that the circuit court's entry of the summary judgment in favor of the Department was based on its conclusion that Rule 810-6-5-.25(1) did not apply and that Boyd Brothers owed use tax pursuant to subsection (c) of § 40-23-61, it erred.
 III.
Boyd Brothers' last argument is that the tax imposed by subsection (e) of § 40-23-61, which applies to interstate commerce, cannot be lawfully imposed upon a transaction that bears no relationship to the taxpayer's presence in Alabama and is higher than the tax on a similar transaction occurring within Alabama.
Subsection (e) provides, in pertinent part:
 "(e) An excise tax is hereby imposed . . . on the storage, use, or other consumption in the performance of a contract in this state of any such tangible personal property, new or used, the tax to be measured by the sales price or the fair and reasonable market value of such tangible personal property when put into use in this state, whichever is less; provided, that the tax imposed by this subsection shall not apply where the taxes imposed by subsection (a), (b), or (c) of this section apply."
(Emphasis added.) Under subsection (e), the taxable event, for purposes of the present case, is the use of the property in the performance of a contract in Alabama. The tax imposed by subsection (e) is an unapportioned flat tax — two percent of either the sales price or the fair market value of the property when it is put to use in Alabama, whichever is less — without regard to the number of miles the taxpayer drives in Alabama.
A state may tax an activity in inter-state commerce if "(1) there is a substantial nexus between the activity and the taxing state; (2) the tax is fairly apportioned; *Page 481 
(3) the tax is nondiscriminatory; and (4) it is reasonably related to services and protection provided by the taxing state." Ex parte Dixie Tool Die Co.,537 So.2d 923, 924 (Ala. 1988) (citing Complete Auto Transit, Inc. v.Brady, 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326
(1977)).
As part of the apportionment test, the United States Supreme Court has held that a tax must be internally and externally consistent. See Goldberg v. Sweet, 488 U.S. 252,109 S.Ct. 582, 102 L.Ed.2d 607 (1989). The Court explained:
 "[W]e are mindful that the central purpose behind the apportionment requirement is to ensure that each State taxes only its fair share of an interstate transaction. . . . [W]e determine whether a tax is fairly apportioned by examining whether it is internally and externally consistent.
 "To be internally consistent, a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result. Thus, the internal consistency test focuses on the text of the challenged statute and hypothesizes a situation where other States have passed an identical statute. . . .
 ". . . .
 "The external consistency test asks whether the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed. We thus examine the in-state business activity which triggers the taxable event and the practical or economic effect of the tax on that inter-state activity. . . .
 ". . . .
 "It should not be overlooked, moreover, that the external consistency test is essentially a practical inquiry. In previous cases we have endorsed apportionment formulas based upon the miles a bus, train, or truck traveled within the taxing State."
Goldberg v. Sweet, 488 U.S. at 260-62, 264,109 S.Ct. 582 (citations omitted).
Citing American Trucking Associations, Inc. v.Scheiner, 483 U.S. 266, 290, 107 S.Ct. 2829, 97 L.Ed.2d 226
(1987), Boyd Brothers argues that whenever any flat tax is applied to vehicles moving in interstate commerce it "discriminate[s] against out-of-state vehicles by subjecting them to a much higher charge per mile traveled in. the State, and [it does] not even purport to approximate fairly the cost or value of the use of [the State's] roads." We agree.
In Scheiner, the Court addressed the validity of two annual flat taxes — a marker fee and an axle fee — imposed by the State of Pennsylvania on the trucking industry. The Court first discussed the fact that its earlier cases had upheld the right of a state to impose flat use taxes if those taxes levied the same tax against all users — both in-state and out-of-state truckers — and were, therefore, facially nondiscriminatory. The Court stated, however, that its more recent Commerce Clause decisions had rejected the earlier approach and had examined the practical effect of flat taxes. With respect to interstate common carriers in particular, the Court held that the methods by which the taxes were assessed contradicted the central purpose of the Commerce Clause because the taxes imposed a much heavier charge per mile of highway use by out-of-state vehicles than by in-state vehicles. The Court explained that, although the state's highways were theoretically open at all times to all users, in practical effect, Pennsylvania-based carriers drove many more miles in the state than truckers who were based out of state *Page 482 
and whose freight hauling was nationwide. The latter group used Pennsylvania high-ways proportionately less than Pennsylvania-based truckers and, consequently, the flat-tax burden fell heavier on them than on their in-state competitors. The Court held that the Pennsylvania flat taxes
 "discriminate against out-of-state vehicles by subjecting them to a much higher charge per mile traveled in the State, and they do not even purport to approximate fairly the cost or value of the use of Pennsylvania's roads."
483 U.S. at 290, 107 S.Ct. 2829. The Court held:
 "Thus, the precedents upholding flat taxes can no longer support the broad proposition, advanced by appellees, that every flat tax for the privilege of using a State's highways must be upheld even if it has a clearly discriminatory effect on commerce by reason of that commerce's interstate character. Although out-of-state carriers obtain a privilege to use Pennsylvania's highways that is nominally equivalent to that which local carriers receive, imposition of the flat taxes for a privilege that is several times more valuable to a local business than to its out-of-state competitors is unquestionably discriminatory and thus offends the Commerce Clause. The great constitutional purpose of the Fathers cannot be defeated by using an apparently neutral `guise of taxation which produces the excluding or discriminatory effect.'"
483 U.S. at 296, 107 S.Ct. 2829 (quoting Nippert v.Richmond, 327 U.S. 416, 426, 66 S.Ct. 586, 90 L.Ed. 760
(1946)).
The tax levied by subsection (e) of § 40-23-61 suffers from the same kind of defects as the Pennsylvania tax. It is a flat two percent imposition that, the Department's auditors conceded, was not apportioned based upon actual miles traveled in the performance of a contract in Alabama. That means that a carrier based in Pensacola that makes just one delivery across the state line in Mobile will pay the same two percent of the value of his truck (and will have driven very few miles) as the intrastate carrier that makes daily deliveries and travels thousands of miles annually in Alabama.
The tax imposed by subsection (e) not only discriminates against interstate commerce and burdens taxpayers like Boyd Brothers that drive only eight percent of their mileage in Alabama but, ultimately, harms the State of Alabama by providing interstate carriers with a financial incentive to bypass the state in order to avoid the tax.
The judgment of the Barbour Circuit Court is reversed, and the cause is remanded for proceedings consistent with the principles expressed in this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
[1] See § 32-6-56, Ala. Code 1975. The final order of the administrative law judge in this case explained that "[t]he IRP is a reciprocal motor-vehicle-registration agreement among the states and the Canadian provinces. It requires that a commercial vehicle must be registered in a single state for purposes of apportioning annual license fees among the various jurisdictions in which the vehicle is operated." See generally American Trucking Ass'ns v.Scheiner, 483 U.S. 266, 271-73, 107 S.Ct. 2829,97 L.Ed.2d 226 (1987).
[2] The trailers were not assigned to a specific truck or to a specific driver, and Boyd Brothers did not maintain records showing where the trailers were used. The Department determined that 70% of the trucks were subject to the use tax, and the Department assumed that 70% of the trailers had also been used in Alabama, thereby subjecting those trailers to the use tax.